1200/26-8645.HC/kmc/sh

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| REBECCA RISNER and JEREMY RISNER<br><br>Plaintiffs,<br><br>v.<br><br>STARKE COUNTY, by and through its Board of Commissioners, PATRICK MCKEE, in his individual capacity, JUSTIN MCDANIEL, in his individual capacity, CHARLES HASNERL, in his official capacity solely for declaratory and prospective injunctive relief, ANGELA JESUIT, in her individual and official capacities, TAYLOR LOCKRIDGE, in her individual and official capacities, LESLIE A. BAKER, in her individual and official capacities, THOMAS M. POULOS, in his individual and official capacities,<br><br>Defendants. | ) | Case No.: 3:26-cv-208-CCB-SJF |

**DEFENDANTS STARKE COUNTY, PATRICK MCKEE, AND JUSTIN MCDANIEL'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants, STARKE COUNTY, PATRICK MCKEE, and JUSTIN MCDANIEL, by and through one of their attorneys, KATLYN M. CHRISTMAN (#34670-64) of CLARK JOHNSON & KNIGHT, LTD., and for their Answer and Affirmative Defenses to Plaintiff's First Amended Complaint [DE #17], state as follows:

**Introduction**

1. This action arises from an unlawful traffic stop, detention, search, and retaliatory prosecution initiated by Defendant Patrick McKee against Plaintiff Rebecca Risner, followed by a series of procedural irregularities and due process violations in the Knox City Court that prolonged

the prosecution despite the absence of probable cause.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 1 of the First Amended Complaint.**

2. Plaintiff Rebecca Risner was subjected to a traffic stop without lawful justification, ordered from her vehicle under threat of force, handcuffed, searched, and later criminally charged based on speech criticizing law enforcement conduct. Plaintiffs husband, Co-Plaintiff Jeremy Risner, was arrested and incarcerated based on inaccurate law enforcement records concerning a dismissed no-contact order.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 2 of the First Amended Complaint.**

3. After the initiation of criminal charges, Plaintiff was subjected to additional constitutional deprivations through restrictions on public courtroom access, denial of meaningful opportunity to present motions, jurisdictional obstruction following a jury demand, and delayed case transfer. The criminal charge against Plaintiff ultimately was dismissed as unconstitutional as applied.

**ANSWER:** **Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of the First Amended Complaint.**

**Jurisdiction and Venue**

4. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to redress violations of their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and to seek damages, as well as declaratory and prospective injunctive relief, to prevent the recurrence of the practices described herein.

**<u>ANSWER:</u> Defendants admit that Plaintiffs have brought this action pursuant to 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendments, but deny that Defendants violated any federal or state rights, and therefore deny the remaining allegations contained in Paragraph 4 of the First Amended Complaint.**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343, because Plaintiffs' claims arise under the Constitution and laws of the United States.

**<u>ANSWER:</u> Defendants admit that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343, but deny any violations of federal or state rights, and therefore deny the remaining allegations contained in Paragraph 5 of the First Amended Complaint.**

6. This Court has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C.§ 1367.

**<u>ANSWER:</u> Defendants admit that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, but deny any violations of federal or state rights, and therefore deny the remaining allegations contained in Paragraph 6 of the First Amended Complaint.**

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred within the Northern District of Indiana, and Defendants reside in or perform official duties within this District.

**<u>ANSWER:</u> Defendants admit that venue is proper, , but deny any violations of federal or state rights, and therefore deny the remaining allegations contained in Paragraph 7 of the First Amended Complaint.**

**Parties**

8. Plaintiff Rebecca Risner (hereinafter Plaintiff), is an adult resident of Starke

County, Indiana. At all relevant times, she was the driver of the vehicle involved in the April 21, 2024 traffic stop and the criminal defendant in the proceedings described herein. Plaintiff also operates a residential house cleaning business in Starke County, Indiana, which depends upon client trust and personal reputation.

**ANSWER:** **Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 8 of the First Amended Complaint.**

9. Plaintiff Jeremy Risner (hereinafter Co-Plaintiff), is an adult resident of Starke County, Indiana and the husband of Plaintiff Rebecca Risner. At all relevant times, he was a passenger in the vehicle on April 21, 2024 and was arrested and incarcerated based on inaccurate law enforcement records. Co-Plaintiff has been formally diagnosed with Post-Traumatic Stress Disorder (PTSD) by a licensed medical provider and has been determined to be disabled by the Social Security Administration pursuant to 42 U.S.C. § 423.

**ANSWER:** **Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 9 of the First Amended Complaint.**

10. Defendant Patrick McKee (hereinafter Defendant McKee), is, and was at all relevant times, a law enforcement officer employed by the Starke County Sheriff's Department. Defendant McKee acted under color of state law and is sued in his individual capacity.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 10 of the First Amended Complaint.**

11. Defendant Justin McDaniel (hereinafter Defendant McDaniel) is, and was at all relevant times, a law enforcement officer employed by the Starke County Sheriff's Department.

Defendant McDaniel acted under color of state law and is sued in his individual capacity.

<u>**ANSWER:**</u> **Defendants deny the allegations contained in Paragraph 11 of the First Amended Complaint.**

12. Defendant Charles Hasnerl (hereinafter Defendant Hasnerl), is, and was at all relevant times, the presiding judge of the Knox City Court in Starke County, Indiana. Defendant Hasnerl is sued in his official capacity solely for declaratory and prospective injunctive relief.

<u>**ANSWER:**</u> **Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 12 of the First Amended Complaint.**

13. Defendant Angela Jesuit (hereinafter Defendant Jesuit), is, and was at all relevant times, the Clerk of the Knox City Court in Starke County, Indiana. Defendant Jesuit is sued in her individual capacity and, where applicable, in her official capacity for declaratory and prospective injunctive relief.

<u>**ANSWER:**</u> **Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the First Amended Complaint.**

14. Defendant Taylor Lockridge (hereinafter Defendant Lockridge), is, and was at all relevant times, the Bailiff of the Knox City Court in Starke County, Indiana. Defendant Lockridge is sued in her individual capacity and, where applicable, in her official capacity for declaratory and prospective injunctive relief.

<u>**ANSWER:**</u> **Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 of the First Amended Complaint.**

15. Defendant Leslie A. Baker (hereinafter Defendant Baker), is, and was at all relevant times, the elected Prosecuting Attorney for Starke County, Indiana. Defendant Baker is sued in her individual capacity for actions taken outside the scope of absolute prosecutorial immunity and in her official capacity for declaratory and prospective injunctive relief.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 15 of the First Amended Complaint.**

16. Defendant Thomas M. Poulos (hereinafter Defendant Poulos), is, and was at all relevant times, a Deputy Prosecuting Attorney for Starke County, Indiana. Defendant Poulos is sued in his individual capacity for actions taken outside the scope of absolute prosecutorial immunity and in his official capacity for declaratory and prospective injunctive relief.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 of the First Amended Complaint.**

17. Defendant Starke County is a political subdivision of the State of Indiana and is responsible for the policies, practices, customs, training, and supervision of the Starke County Sheriff's Department relevant to the claims asserted herein.

**ANSWER: Defendants admit that Starke County is a political subdivision of the State of Indiana, but deny the remaining allegations contained in Paragraph 17 of the First Amended Complaint.**

## FACTUAL ALLEGATIONS

### A. April 21, 2024 - Traffic Stop, Detention, Search, and Arrest

18. On April 21, 2024, during the early morning hours at approximately 12:30 a.m.,

Plaintiff was lawfully operating her motor vehicle on rural roads in Starke County, Indiana. Co-Plaintiff, Jeremy Risner, was seated in the front passenger seat.

**ANSWER: Defendants admit that on April 21, 2024 Plaintiff was operating a vehicle in Starke County, Indiana, admit that Jeremy Risner was in the front passenger seat, but deny the remaining allegations contained in Paragraph 18 of the First Amended Complaint.**

19. As Plaintiff approached the intersection of South 100 West and West 400 South, she observed a vehicle facing her direction with its high-beam headlights activated.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 19 of the First Amended Complaint.**

20. The vehicle was stationary at the intersection. The vehicle was not subject to a stop sign. The vehicle had its left turn signal activated. The high-beam headlights reduced Plaintiffs forward visibility.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 of the First Amended Complaint.**

21. Plaintiff briefly flashed her own headlights in an attempt to signal the other driver to dim the high beams. The vehicle did not dim its lights. Relying on the activated turn signal of the other vehicle, Plaintiff completed a left turn onto West 400 South.

**ANSWER: Defendants admit that Plaintiff flashed her headlights, admit that Plaintiff turned left onto West 400 South, but deny the remaining allegations contained in Paragraph 21 of the First Amended Complaint.**

22. The vehicle, later identified as a police cruiser operated by Defendant McKee,

abruptly turned right and began following Plaintiff. Plaintiff set her cruise control to the posted speed limit. After following Plaintiff for approximately one-and-a-half to two miles, Defendant McKee activated his emergency lights.

**ANSWER:** **Defendants admit that Deputy McKee began following Plaintiff, admit that Deputy McKee activated his emergency lights, but deny the remaining allegations contained in Paragraph 22 of the First Amended Complaint.**

23. Plaintiff promptly pulled over into the parking lot of the Bass Lake Volunteer Fire Department, a well-lit and open area, to safely accommodate the traffic stop.

**ANSWER:** **Defendants admit that Plaintiff pulled over into the Bass Lake Volunteer Fire Department parking lot, but lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 23 of the First Amended Complaint.**

24. Defendant McKee approached Plaintiff's vehicle and stated that he initiated the stop because Plaintiff's vehicle "had struck the edge of the roadway". Plaintiff disputed this assertion. Dash camera video from Defendant McKee's patrol vehicle does not show Plaintiff's vehicle striking the edge of the roadway, swerving, or committing any observable traffic violation in the period immediately preceding the stop.

**ANSWER:** **Defendants admit that after Deputy McKee approached Plaintiff's vehicle, he stated the reason he initiated the stop was that she hit the edge of the roadway, admit that Plaintiff disputed the reason, and admit that in the period immediately preceding the stop, the dash cam does not show Plaintiff's vehicle striking the edge of the roadway, swerving, or committing a traffic violation, but deny that the dash cam shows the entire length of time that Deputy McKee was following Plaintiff and therefore, deny the remaining allegations**

**contained in Paragraph 24 of the First Amended Complaint.**

25. During the initial interaction, Plaintiff questioned the legality of the stop and the basis for Defendant McKee's assertion. Defendant McKee then ordered Plaintiff to exit the vehicle.

**ANSWER: Defendants admit that Plaintiff questioned the legality of the stop, admit that Deputy McKee asked Plaintiff to exit the vehicle, but deny the sequence of events as alleged in Paragraph 25, and therefore, deny the remaining allegations contained in Paragraph 25 of the First Amended Complaint.**

26. Plaintiff's speech during this exchange was directed at law enforcement and was not accompanied by any physical threat or obstruction.

**ANSWER: Defendants deny the allegations contained in Paragraph 26 of the First Amended Complaint.**

27. Plaintiff did not voluntarily consent to exit the vehicle. Defendant McKee stated that Plaintiff would be forcibly removed from the vehicle if she did not comply. Under duress, Plaintiff exited the vehicle.

**ANSWER: Defendants admit that Deputy McKee stated that if she did not exit the vehicle he would remove her from the vehicle, but deny the sequence of events as alleged in Paragraph 27, and therefore, deny the remaining allegations contained in Paragraph 27 of the First Amended Complaint.**

28. After Plaintiff exited the vehicle, Defendant McKee continued to detain Plaintiff beyond the time reasonably required to address the stated purpose of the stop.

**ANSWER: Defendants deny the allegations contained in Paragraph 28 of the First Amended Complaint.**

29. Defendant McKee demanded Plaintiff's identification. Plaintiff retrieved her purse

from the rear of the vehicle and provided her driver's license.

**<u>ANSWER:</u> Defendants admit that Deputy McKee requested Plaintiff's identification, admit that Plaintiff eventually retrieved her purse from the rear of the vehicle and provided her driver's license, but deny the sequence of events as alleged in Paragraph 29, and therefore, deny the remaining allegations contained in Paragraph 29 of the First Amended Complaint.**

30. Defendant McKee announced that he intended to conduct a pat-down search of Plaintiff's person. Plaintiff objected and stated that she did not consent to any search.

**<u>ANSWER:</u> Defendants admit that Deputy McKee advised of his intent to conduct a pat-down search, admit that Plaintiff objected and stated that she did not consent, but deny the sequence of events as alleged in Paragraph 30, and therefore, deny the remaining allegations contained in Paragraph 30 of the First Amended Complaint.**

31. Defendant McKee placed Plaintiff in handcuffs behind her back. Plaintiff remained physically compliant and had not been cited for any criminal offense.

**<u>ANSWER:</u> Defendants admit the allegations contained in Paragraph 31 of the First Amended Complaint.**

32. Defendant McKee directed an assisting officer, Reserve Officer Justin Harman, to remove Co-Plaintiff, from the vehicle. Co-Plaintiff was detained and subjected to a pat-down search.

**<u>ANSWER:</u> Defendants admit the allegations contained in Paragraph 32 of the First Amended Complaint.**

33. While Plaintiff remained handcuffed, Defendant McKee retrieved his K9 partner from his vehicle, and conducted a canine sniff around Plaintiff's vehicle and then searched the

interior of the vehicle after reporting to dispatch that the K9 had alerted to the presence of drugs in the vehicle.

__ANSWER:__ **Defendants admit that while Plaintiff was handcuffed, Deputy McKee retrieved his K9 partner from his vehicle and conducted a free air sniff around Plaintiff's vehicle, admit that Deputy McKee's K9 alerted, admit that Deputy McKee reported to dispatch that his K9 had alerted, admit that after reporting the alert to dispatch, Deputy McKee searched the vehicle, but deny the remaining allegations contained in Paragraph 33 of the First Amended Complaint.**

34. During the time Defendant McKee was walking his K9 partner around her vehicle, Plaintiff stated multiple times that she did not consent to the K9 search.

__ANSWER:__ **Defendants admit that while Deputy McKee was walking his K9 partner around the vehicle, Plaintiff stated that she did not consent to the K9 search, but deny the remaining allegations contained in Paragraph 34 of the First Amended Complaint.**

35. During the search, Defendant McKee located a handgun and ammunition inside Plaintiff's purse. Plaintiff lawfully possessed the firearm and held a valid license to carry. No drugs or other contraband were found.

__ANSWER:__ **Defendants admit the allegations contained in Paragraph 35 of the First Amended Complaint.**

36. During the warrant-less search of Plaintiffs vehicle, Defendant McKee and assisting officers caused physical damage to the vehicle's interior, including removal and breakage of interior door panels, vent covers, seat upholstery brackets, interior storage components, and gouging of interior surfaces to access concealed areas of the vehicle.

__ANSWER:__ **Defendants deny the allegations contained in Paragraph 36 of the First**

**Amended Complaint.**

37. During the search of the vehicle, officers received information from dispatch indicating that an active no-contact order prohibited Co-Plaintiff from contact with Plaintiff. The no-contact order had, in fact, been dismissed in July 2022 and was not valid.

**ANSWER: Defendants admit that during the search of the vehicle, officers received information indicating that an active no-contact order prohibited Co-Plaintiff from contact with Plaintiff, but lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 37 of the First Amended Complaint.**

38. Upon information and belief, the inaccurate "no-contact order" information relayed by dispatch originated from the maintenance of a no-contact order record within the Starke County Prosecutor's Office that was not updated to reflect the July 2022 dismissal.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 38 of the First Amended Complaint.**

39. Upon information and belief, the Prosecutor's Office Victim Advocate assigned to Plaintiffs' matter opened the no-contact order file, entered, and maintained status information used for law-enforcement notification purposes, and exercised administrative control over the file's continued "active" designation despite the dismissal reflected in the public court record.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 39 of the First Amended Complaint.**

40. Upon information and belief, the same Victim Advocate later closed the no-contact

order file approximately two years after the July 2022 dismissal; confirming that the file's status remained administratively managed within the Prosecutor's Office rather than being automatically controlled by any judicial act.

**ANSWER:** **Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 40 of the First Amended Complaint.**

41. Defendant Baker, as elected Prosecuting Attorney, was responsible for supervision and oversight of the Prosecutor's Office administrative staff, including Victim Advocate personnel, and for implementing ministerial safeguards to ensure that dismissed no-contact orders were not maintained or communicated as active. The failure to correct and prevent dissemination of inaccurate order-status information foreseeably resulted in Co-Plaintiff's April 21, 2024 arrest and overnight incarceration based on an order that had been dismissed in July 2022.

**ANSWER:** **Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 41 of the First Amended Complaint.**

42. Plaintiff informed the officers that the protective order had been dismissed and offered to provide verification through public court records. Officers did not verify the information.

**ANSWER:** **Defendants admit that Plaintiff told officers that the protective order had been dismissed and offered to show them, but deny the remaining allegations contained in Paragraph 42 of the First Amended Complaint.**

43. Co-Plaintiff was placed in handcuffs and arrested based on the information received from dispatch.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 43 of the First**

**Amended Complaint.**

44. While Co-Plaintiff was being arrested, Plaintiff informed officers again that the no-contact order had been dismissed. Defendant McKee warned Plaintiff that she would be taken to jail if she continued speaking.

**<u>ANSWER:</u> Defendants admit that while Co-Plaintiff was being arrested, Plaintiff stated that the no-contact order had been dismissed, admit that Deputy McKee warned Plaintiff that she would be taken to jail if she continued, but deny that Paragraph 44 provides a complete summary of the events at this stage of the traffic stop, and therefore, deny the remaining allegations contained in Paragraph 44 of the First Amended Complaint.**

45. Plaintiff was then placed in the back of a patrol vehicle while still handcuffed. While escorting Plaintiff, Defendant McDaniel stated that they "did not like the sound of Plaintiff's voice" after Plaintiff asked why she was being confined in the police vehicle. After Plaintiff was secured in the patrol vehicle, Defendant McDaniel stated to Defendant McKee he "was glad they no longer had to listen to her".

**<u>ANSWER:</u> Defendants admit that Plaintiff was placed in the back of a patrol vehicle while handcuffed, but deny the remaining allegations contained in Paragraph 45 of the First Amended Complaint.**

46. Plaintiff remained confined in the patrol vehicle while officers continued their search of her vehicle. During this time, officers muted their body cameras and engaged in an off-record conversation.

**<u>ANSWER:</u> Defendants admit that Plaintiff remained in the patrol vehicle while the search of the vehicle continued, but deny the remaining allegations contained in Paragraph 46 of the First Amended Complaint.**

47. After completing the search and investigation, Defendant McDaniel removed Plaintiff from the patrol vehicle, removed her handcuffs, and informed her that she was free to leave. Plaintiff again questioned the arrest of her husband, and was warned to leave the area.

**ANSWER: Defendants admit that Deputy McDaniel removed Plaintiff from the patrol vehicle, removed her handcuffs, and informed her that she was free to leave, admit that Plaintiff questioned if her husband was being arrested, but deny the remaining allegations contained in Paragraph 47 of the First Amended Complaint.**

48. Plaintiff then left the scene approximately 30 minutes after the traffic stop began. Plaintiff's husband, Co-Plaintiff was transported to the Starke County Justice Center.

**ANSWER: Defendants admit that Plaintiff left the scene, admit that Co-Plaintiff was transported to the Starke County Justice Center, but lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 48 of the First Amended Complaint.**

49. Co-Plaintiff remained detained overnight and was released in the morning of April 22, 2024, after verification confirmed the order had been dismissed.

**ANSWER: Defendants admit the allegations contained in Paragraph 49 of the First Amended Complaint.**

**B. July-October 2024 - Charging and Notice Irregularities**

50. Plaintiff did not receive a summons or certified notice of any criminal charge arising from the April 21, 2024 incident.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 50 of the First Amended Complaint.**

51. In late July 2024, Plaintiff received an unsolicited correspondence from a private attorney advertising representation in a criminal matter.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 51 of the First Amended Complaint.**

52. Plaintiff reviewed the public court docket and discovered that a misdemeanor charge of Disorderly Conduct had been filed against her on July 22, 2024, approximately three months after the incident.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 52 of the First Amended Complaint.**

53. Plaintiff later received a notice that an initial hearing had been set for October 1, 2024. The notice did not specify the nature of the charge, was sent by regular mail, and was not accompanied by a summons.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 53 of the First Amended Complaint.**

**C. October 2024 - February 2025 - Knox City Court Proceedings**

54. Plaintiff appeared for the October 1, 2024 initial hearing in Knox City Court.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 54 of the First Amended Complaint.**

55. Following the hearing, Plaintiff engaged in a conversation with Defendant Poulos

regarding charging practices and evidentiary review. The conversation occurred in an office with the door open.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 55 of the First Amended Complaint.**

56. Prior to Plaintiffs first pretrial conference on November 19, 2024, a third party (who was in attendance at the initial hearing on October 1st) published a video on YouTube containing an audio recording of the conversation that was had at the October 1st hearing with the prosecutor. Plaintiff did not make the recording, nor had any knowledge of its existence at the time.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 56 of the First Amended Complaint.**

57. At the November 19, 2024 pretrial conference, Defendant Poulos reprimanded Plaintiff regarding the published recording and accused her of illegally recording the conversation. Plaintiff denied involvement in making the recording.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 57 of the First Amended Complaint.**

58. During the same pretrial conference, Defendant Poulos informed Plaintiff that because of the third party video, she would be given two options: to accept a plea agreement or proceed to trial. Defendant Poulos declined to review written materials Plaintiff provided.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 58 of the First Amended**

**Complaint.**

59. Plaintiff requested and was granted a second pretrial conference, which occurred on January 14, 2025.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 59 of the First Amended Complaint.**

60. On January 4, 2025, Plaintiff filed a Pro Se Motion to Dismiss raising defects in the charging information.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 60 of the First Amended Complaint.**

61. At the January 14, 2025 pretrial conference, Plaintiff challenged the defects in the charging information as well as subject matter jurisdiction. Defendant Poulos asserted that the Knox City Court retained jurisdiction.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 61 of the First Amended Complaint.**

62. The Knox City Court set Plaintiffs Motion to Dismiss for hearing on February 4, 2025.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 62 of the First Amended Complaint.**

63. When Plaintiff arrived for the February 4, 2025 hearing, Defendant Lockridge

prevented Plaintiff from bringing her laptop computer into the courtroom and required her to leave it in the lobby area; Plaintiff was also required to wait in the lobby area until her case was called where previously she had been permitted to wait in the gallery with the other criminal defendants.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 63 of the First Amended Complaint.**

64. Multiple members of the public, including Plaintiffs family members and supporters, were denied entry into the courtroom by Defendant Lockridge.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 64 of the First Amended Complaint.**

65. At the Februa1y 4, 2025 hearing, Defendant Hasnerl denied Plaintiffs Motion to Dismiss. Defendant Hasnerl stated that the purpose of the hearing was to inform Plaintiff that her motion was denied and that her arguments written in her motion, regarding defects in the charging information were irrelevant. Plaintiff was not permitted to present argument in support of her motion.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 65 of the First Amended Complaint.**

66. On February 10, 2025, Plaintiff filed a demand for a jury trial and a request for written findings of fact and conclusions of law.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 66 of the First Amended**

**Complaint.**

67. On February 11, 2025, Defendant Hasnerl granted Plaintiffs demand for jury trial, but denied Plaintiffs request for written findings, stating that Knox City Court was a court of no record.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 67 of the First Amended Complaint.**

**D. February-March 2025-Jury Demand, Jurisdictional Breakdown, and Transfer**

68. After the jury demand was granted, Plaintiff inquired via email after no activity appeared on the chronological case summary for one week. Plaintiff was informed by Defendant Jesuit that the court was facilitating logistics to conduct Plaintiff's jury trial in Knox City Court.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 68 of the First Amended Complaint.**

69. Plaintiff informed Defendant Jesuit that, under Indiana law, the Knox City Court lacked jurisdiction to conduct a jury trial on a charge arising from conduct that occurred outside the city limits of Knox, and that the case was required to be transferred to Starke Circuit Court.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 69 of the First Amended Complaint.**

70. Defendant Jesuit asserted that the Knox City Court retained jurisdiction, advised that Judge Hasnerl had ruled that the trial would be held in City Court, and advised Plaintiff that

she was required to submit a written request for change of venue.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 70 of the First Amended Complaint.**

71. On February 18, 2025, Plaintiff submitted a written request to transfer the case to the Starke Circuit Court.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 71 of the First Amended Complaint.**

72. Plaintiff later learned that her February 10 filings did not appear on the court's chronological case summary until February 19, 2025.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 71 of the First Amended Complaint.**

73. Plaintiffs case was formally transferred out of the Knox City Court on February 19, 2025.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 73 of the First Amended Complaint.**

74. The Starke Circuit Court did not receive or docket the case until March 13, 2025, following additional administrative delay.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 74 of the First Amended**

**Complaint.**

**E. April-June 2025- Circuit Court Proceedings and Dismissal**

75. On April 11, 2025, Plaintiff appeared for an initial hearing in Starke Circuit Court before Magistrate Micah Cox.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 75 of the First Amended Complaint.**

76. Prior to the hearing, Plaintiff filed a renewed motion to dismiss; citing, among other things, the defect in the charging information.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 76 of the First Amended Complaint.**

77. During the April 11, 2025 hearing, Magistrate Cox inquired whether an amended charge could have been filed prior to the hearing that day. Defendant Poulos stated that he believed the amended charging information had already been filed.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 77 of the First Amended Complaint.**

78. A short time later, just prior to the hearing concluding, Defendant Poulos filed the amended charging information in the Knox City Court at 10:24AM.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 78 of the First Amended Complaint.**

79. Defendant Poulos filed the same amended charging information in Starke Circuit Court at 11:36AM, more than one hour later.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 79 of the First Amended Complaint.**

80. On May 12th, 2025, Plaintiff submitted a discovery request to Defendant Poulos via email, seeking disciplinary, Internal Affairs, and Giglio-related records for Defendant McKee and Defendant McDaniel, CAD logs, and other relevant materials.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 80 of the First Amended Complaint.**

81. Defendant Baker responded to Plaintiffs discovery request and informed Plaintiff that she would be handling the case going forward. Defendant Baker also stated that there were no disciplinary, Internal Affairs, or Giglio-related records in the State's possession.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 81 of the First Amended Complaint.**

82. On May 12, 2025, Plaintiff filed a Motion to Suppress and, in the alternative, a Motion to Dismiss, supported by sworn statements and video-based exhibits.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 82 of the First Amended Complaint.**

83. A hearing on Plaintiffs motions was held on June 16, 2025.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 83 of the First Amended Complaint.**

84. Defendant McKee appeared and testified in the June 16, 2025 hearing addressing Plaintiff's motion to suppress and dismiss the disorderly conduct charge. At that hearing, McKee continued to adhere to and advance the version of events set forth in his sworn Probable Cause Affidavit, including characterizations of Plaintiff's speech and conduct as disruptive and disorderly.

**<u>ANSWER:</u> Defendants admit that Deputy McKee testified at the June 16, 2025 hearing, admit that Deputy McKee testified in accordance with his Probable Cause Affidavit, admit that Plaintiff's speech and conduct was disruptive and disorderly, but deny the remaining allegations contained in Paragraph 84 of the First Amended Complaint.**

85. During a recess of the hearing, while in Defendant Baker's office reviewing video evidence prior to Plaintiffs submission to the court, Defendant Baker objected to the inclusion of body camera footage from Defendant McDaniel on the grounds that Defendant McDaniel was not present to testify.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 85 of the First Amended Complaint.**

86. Plaintiff initially agreed to exclude Defendant McDaniel's body camera footage following representations made by Defendant Baker regarding its admissibility. Plaintiff subsequently withdrew that agreement and requested that the court rule on the admissibility of the footage.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 86 of the First Amended Complaint.**

87. The court heard Defendant Baker's objection to the admission of Defendant McDaniel's body camera footage, and the court overruled Defendant Baker's objection and allowed Plaintiff to include all of the relevant video footage.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 87 of the First Amended Complaint.**

88. Following review of the body-worn and dash camera footage and the evidence presented, the Starke Circuit Court expressly found that Plaintiffs speech ‘occurred at a normal speaking volume, was directed at law enforcement conduct, and did not amount to abusive or disorderly behavior’. In its written order, the court noted that it was ‘surprised at how straightforward and unambiguous Plaintiffs speech actually was,’ and concluded that the disorderly conduct statute was unconstitutional as applied to Plaintiff under the circumstances.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 88 of the First Amended Complaint.**

89. The Starke Circuit Court dismissed the Disorderly Conduct charge against Plaintiff by written order dated June 30th, 2025.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 89 of the First Amended Complaint.**

90. Despite the clarity of the video evidence and the court's findings directly contradicting the narrative advanced in McKee's Probable Cause Affidavit, the prosecution against Plaintiff had been initiated and continued until its dismissal for approximately eleven months.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 90 of the First Amended Complaint.**

**F. August 2025- Post-Dismissal Public Statements by Prosecuting Authority**

91. On July 8th, 2025, eight days after the Starke Circuit Court dismissed the Disorderly Conduct charge as unconstitutional as applied, Defendant Baker published a post on her public Facebook page referencing the court's ruling and linking to the publicly available case record on Indiana's public court system.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 91 of the First Amended Complaint.**

92. In that post, Defendant Baker characterized the prosecution and its outcome as demonstrating that the process worked.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 92 of the First Amended Complaint.**

93. Defendant Baker further stated in that post that she disagreed with the court's constitutional ruling.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 93 of the First Amended**

**Complaint.**

94. Defendant Baker further stated that she would take the court's ruling back to law enforcement to address it accordingly.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 94 of the First Amended Complaint.**

95. On or about August 19, 2025, Defendant Baker, published multiple statements on her public Facebook page maintained under the designation 'Prosecuting Attorney,' as identified on the page.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 95 of the First Amended Complaint.**

96. The statements were posted in response to public commentary concerning Plaintiffs' criminal case and were visible to members of the general public.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 96 of the First Amended Complaint.**

97. In those public statements, Defendant Baker identified Plaintiff by name and asserted, among other things, that Plaintiff was responsible for her husband being charged with a crime, disagreed with the court's ruling dismissing Plaintiff's disorderly conduct charge, and characterized Plaintiff's concerns regarding the prosecution and court proceedings as unfounded.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 97 of the First Amended**

**Complaint.**

98. Plaintiff responded four times in the same public forum and then expressly stated that she would refrain from further public engagement regarding the matter.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 98 of the First Amended Complaint.**

99. On or about August 21, 2025, approximately two days after the above-described exchange, Defendant Baker's public Facebook page maintained in her official capacity as Prosecuting Attorney was deleted and was no longer accessible to the public.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 99 of the First Amended Complaint.**

100. Screen shots of the statements, including visible time stamps and identifying metadata, were preserved prior to deletion.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 100 of the First Amended Complaint.**

### G. May-July 2024 - Related Federal Civil Rights Action Involving Defendant McKee

101. On or about May 4, 2024, Defendant McKee was alleged to have been involved in a separate law enforcement encounter that later became the subject of a federal civil rights action, Singleton v. McKee, Case No. 3:24-cv-564.

**ANSWER: Defendants admit the allegations contained in Paragraph 101 of the First**

**Amended Complaint.**

102. The Singleton complaint alleged, among other things, that Defendant McKee conducted an unlawful traffic stop, escalated the encounter following verbal criticism, subjected the plaintiff to a frisk and handcuffing without lawful justification, and released the plaintiff without citation or charge.

**ANSWER: Defendants admit the allegations contained in Paragraph 102 of the First Amended Complaint.**

103. Defendant McKee was employed by the Starke County Sheriff's Department at the time of the Singleton incident.

**ANSWER: Defendants admit the allegations contained in Paragraph 103 of the First Amended Complaint.**

104. The filing of the Singleton lawsuit placed Starke County and the Starke County Sheriff's Department on formal notice of allegations that Defendant McKee had engaged in conduct materially similar to that alleged herein, including a traffic stop, escalating the encounter following verbal criticism, and detaining and searching a person without citation or arrest.

**ANSWER: Defendants deny the allegations contained in Paragraph 104 of the First Amended Complaint.**

105. Upon information and belief, Defendant McKee continued to exercise law enforcement authority after the filing of the Singleton lawsuit, and no corrective action, retraining, or restriction of duties was implemented to prevent the recurrence of materially similar conduct.

**ANSWER: Defendants deny the allegations contained in Paragraph 105 of the First Amended Complaint.**

106. The Singleton lawsuit was resolved by settlement in or about December 2025.

**<u>ANSWER:</u> Defendants admit that the Singleton lawsuit was resolved by settlement, but deny the remaining allegations contained in Paragraph 106 of the First Amended Complaint.**

**CAUSES OF ACTION**
**COUNT I - Fourth Amendment Violations**
**(Unlawful Stop, Detention, Search, and Seizure)**

107. Plaintiffs re-allege and incorporate by reference all preceding Paragraphs as if fully set forth herein.

**<u>ANSWER:</u> Defendants incorporate by reference, as though set fully herein, Paragraphs 1-106, inclusive, of their foregoing Answer as their answer to Paragraph 107 of the First Amended Complaint.**

108. Defendant Patrick McKee initiated a traffic stop of Plaintiff's vehicle without reasonable suspicion that a traffic violation or a criminal offense had occurred or was occurring.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 108 of the First Amended Complaint.**

109. Defendant McKee unlawfully prolonged the traffic stop beyond its original purpose, ordered Plaintiff out of her vehicle under threat of force, handcuffed her without lawful justification, and subjected her to an unlawful pat-down search.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 109 of the First Amended Complaint.**

110. Defendant McKee conducted a warrant-less canine sniff and Defendant McKee and McDaniel then conducted a destructive search of Plaintiffs vehicle without probable cause or consent.

**<u>ANSWER:</u> Defendants admit that Deputy McKee conducted a free air sniff, admit that Deputy McKee and Deputy McDaniel conducted a search of Plaintiff's vehicle, but deny the**

**remaining allegations contained in Paragraph 110 of the First Amended Complaint.**

111. As a direct and proximate result, Plaintiffs suffered deprivation of liberty, property damage, emotional distress, and other compensable harms.

**ANSWER: Defendants deny the allegations contained in Paragraph 111 of the First Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**COUNT II - Fabrication of Evidence and Deprivation of Due Process**
**(Fourteenth Amendment -- 42 U.S.C. § 1983)**

112. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference, as though set fully herein, Paragraphs 1-111, inclusive, of their foregoing Answer as their answer to Paragraph 112 of the First Amended Complaint.**

113. Defendant McKee fabricated and exaggerated observations regarding Plaintiffs driving conduct, including false assertions that Plaintiff struck the edge of the roadway on two separate occasions.

**ANSWER: Defendants deny the allegations contained in Paragraph 113 of the First Amended Complaint.**

114. Defendant McKee omitted material exculpatory information from the probable cause narrative, including facts reflected on dash and body camera footage.

**ANSWER: Defendants deny the allegations contained in Paragraph 114 of the First**

**Amended Complaint.**

115. The fabricated and misleading narrative was used to justify the traffic stop, detention, search, and subsequent criminal charge.

**ANSWER: Defendants deny the allegations contained in Paragraph 115 of the First Amended Complaint.**

116. As a result of the fabricated and misleading narrative described above, Plaintiff was detained, searched, and subjected to criminal proceedings based on information that was inconsistent with the contemporaneous video evidence.

**ANSWER: Defendants deny the allegations contained in Paragraph 116 of the First Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**COUNT III - Deprivation of Liberty Based on Administratively Maintained Inaccurate Protective-Order Records**
**(Fourteenth Amendment -Due Process - 42 U.S.C. § 1983)**

117. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference, as though set fully herein, Paragraphs 1-116, inclusive, of their foregoing Answer as their answer to Paragraph 117 of the First Amended Complaint.**

118. Upon information and belief, administrative personnel within the Prosecutor's Office, including a Victim Advocate acting under the supervision and authority of Defendant

Baker, opened, maintained, and failed to timely correct the no-contact order file, resulting in the continued designation of the order as active for law-enforcement notification purposes.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 118 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 118 of the First Amended Complaint.**

119. The maintenance and communication of accurate order-status information following dismissal of a no-contact order constitutes a ministerial, non-discretionary administrative function.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 119 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 119 of the First Amended Complaint.**

120. Defendant Baker, in her administrative capacity, was responsible for supervision, training, and implementation of ministerial safeguards to ensure that dismissed no-contact orders were not maintained or communicated as active. This includes the failure to maintain adequate procedures for verifying the current status of no-contact orders prior to law enforcement action based on those records.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 120 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form**

**a belief as to the truth or falsity of the allegations contained in Paragraph 120 of the First Amended Complaint.**

121. The deprivation of liberty described herein did not result from a random or unauthorized act of a rogue employee, but from established administrative practices and the absence of adequate procedural safeguards within the Prosecutor's Office governing the maintenance, verification, and communication of no-contact order status information to law enforcement.

**<u>ANSWER:</u> Defendants make no answer as to the allegations contained in Paragraph 121 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 121 of the First Amended Complaint.**

122. Defendants knew or reasonably should have known that dissemination of inaccurate no-contact order status information would foreseeably result in unlawful detention or arrest of the person subject to the dismissed order.

**<u>ANSWER:</u> Defendants make no answer as to the allegations contained in Paragraph 122 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 122 of the First Amended Complaint.**

123. On April 21, 2024, law-enforcement officers relied on the administratively maintained inaccurate order-status information to arrest and incarcerate Co-Plaintiff, despite Co-Plaintiff's contemporaneous assertion that the order had been dismissed and the ready availability

of public court records confirming that dismissal.

**<u>ANSWER:</u> Defendants admit that Co-Plaintiff was arrested on April 21, 2024 based on the presence of the no-contact order, admit that Plaintiff stated the order had been dismissed, but deny the remaining allegations contained in Paragraph 123 of the First Amended Complaint.**

124. As a direct and proximate result of Defendants' actions and omissions, Co-Plaintiff was unlawfully arrested, detained, and incarcerated overnight without lawful justification or constitutionally adequate process.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 124 of the First Amended Complaint.**

125. The deprivation of Co-Plaintiff's liberty occurred without pre-deprivation process and without adequate post-deprivation safeguards, in violation of the Due Process Clause of the Fourteenth Amendment.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 125 of the First Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**COUNT IV - False Arrest / False Imprisonment**
**(Indiana Common Law)**

126. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

**<u>ANSWER:</u> Defendants incorporate by reference, as though set fully herein, Paragraphs**

**1-126, inclusive, of their foregoing Answer as their answer to Paragraph 127 of the First Amended Complaint.**

127. Under Indiana common law, false arrest and false imprisonment occur when a person is intentionally restrained or detained without lawful authority.

**ANSWER: Defendants deny the allegations contained in Paragraph 127 of the First Amended Complaint.**

128. On April 21, 2024, Defendants McKee and McDaniel intentionally restrained and arrested Plaintiff by ordering her from her vehicle under threat of force, placing her in handcuffs, and confining her in the rear of a patrol vehicle.

**ANSWER: Defendants deny the allegations contained in Paragraph 128 of the First Amended Complaint.**

129. At the time Plaintiff was restrained and confined, Defendants lacked probable cause to believe she had committed any criminal offense.

**ANSWER: Defendants deny the allegations contained in Paragraph 129 of the First Amended Complaint.**

130. Plaintiff was not free to leave and remained under custodial restraint until Defendants released her without citation or charge after no contraband or evidence of criminal activity was found.

**ANSWER: Defendants admit that Plaintiff was not free to leave, admit that she was released without citation or charge, admit that no contraband or evidence of criminal activity was found, but deny the remaining allegations contained in Paragraph 130 of the First Amended Complaint.**

131. On April 21, 2024, Defendants McKee and McDaniel also intentionally restrained

and arrested Co-Plaintiff based solely on information indicating the erroneous existence of an active no-contact order.

**ANSWER: Defendants admit that Co-Plaintiff was restrained and arrested based on the active no-contact order, but deny the remaining allegations contained in Paragraph 131 of the First Amended Complaint.**

132. At the time of Co-Plaintiffs arrest, the referenced no-contact order had been formally dismissed by court order in July 2022 and was not legally valid or enforceable.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 132 of the First Amended Complaint.**

133. Co-Plaintiff informed Defendants that the no-contact order had been dismissed, and the accuracy of that information was readily verifiable through public court records.

**ANSWER: Defendants admit that Plaintiff stated that the no-contact order was dismissed, admit that Plaintiff stated the information was in the public court records, but deny the remaining allegations contained in Paragraph 133 of the First Amended Complaint.**

134. Notwithstanding the absence of lawful authority, Defendants arrested Co-Plaintiff and detained him overnight in the county jail.

**ANSWER: Defendants admit that Co-Plaintiff was arrested and detained overnight in the County jail, but deny the remaining allegations contained in Paragraph 134 of the First Amended Complaint.**

135. Co-Plaintiff was released on April 22, 2024, after confirmation that no valid no-contact order existed.

**ANSWER: Defendants admit the allegations contained in Paragraph 135 of the First**

**Amended Complaint.**

136. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered loss of liberty, emotional distress, humiliation, and other compensable harms.

**ANSWER: Defendants deny the allegations contained in Paragraph 136 of the First Amended Complaint.**

137. Defendant Starke County is liable for the actions of Defendants McKee and McDaniel under the doctrine of respondeat superior.

**ANSWER: Defendants deny the allegations contained in Paragraph 137 of the First Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**COUNT V - Trespass to Chattels / Conversion**
**(Indiana Common Law)**

138. Plaintiff Rebecca Risner re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference, as though set fully herein, Paragraphs 1-137, inclusive, of their foregoing Answer as their answer to Paragraph 138 of the First Amended Complaint.**

139. Plaintiff was at all relevant times the lawful owner and possessor of the motor vehicle searched by Defendants on April 21, 2024.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 139 of the First Amended**

**Complaint.**

140. During the warrantless search of Plaintiffs vehicle, Defendants McKee and McDaniel intentionally interfered with Plaintiffs possessory interest in the vehicle by dismantling, damaging, and destroying interior components, including but not limited to door panels, vent covers, interior storage areas, and upholstery fixtures.

**ANSWER: Defendants deny the allegations contained in Paragraph 140 of the First Amended Complaint.**

141. The damage inflicted exceeded what was reasonably necessary to conduct any lawful search and was not justified by probable cause, consent, or exigent circumstances.

**ANSWER: Defendants deny the allegations contained in Paragraph 141 of the First Amended Complaint.**

142. Defendants' actions substantially deprived Plaintiff of the use, condition, and value of her vehicle and caused physical damage requiring repair.

**ANSWER: Defendants deny the allegations contained in Paragraph 142 of the First Amended Complaint.**

143. Defendants' intentional interference with Plaintiff's personal property constituted trespass to chattels and conversion under Indiana common law.

**ANSWER: Defendants deny the allegations contained in Paragraph 143 of the First Amended Complaint.**

144. Defendant Starke County is liable for the actions of Defendants McKee and McDaniel under the doctrine of respondeat superior.

**ANSWER: Defendants deny the allegations contained in Paragraph 144 of the First Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**Count VI- Malicious Prosecution**
**(Fourth and Fourteenth Amendments -42 U.S.C. § 1983)**

145. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference, as though set fully herein, Paragraphs 1-144, inclusive, of their foregoing Answer as their answer to Paragraph 145 of the First Amended Complaint.**

146. Defendant McKee, acting under color of state law, initiated and caused the initiation of criminal proceedings against Plaintiff by preparing and submitting a probable cause affidavit and related charging materials seeking a misdemeanor Disorderly Conduct charge.

**ANSWER: Defendants admit that Deputy McKee prepared and submitted a probable cause affidavit, but deny the remaining allegations contained in Paragraph 144 of the First Amended Complaint.**

147. The criminal proceedings were initiated without probable cause and were based on Plaintiffs protected speech rather than criminal conduct.

**ANSWER: Defendants deny the allegations contained in Paragraph 147 of the First Amended Complaint.**

148. Defendant McKee appeared and testified at the June 16th, 2025 hearing and continued to advance the narrative set forth in his sworn affidavit.

**ANSWER: Defendants admit the allegations contained in Paragraph 148 of the First**

**Amended Complaint.**

149. The criminal proceedings terminated in Plaintiffs favor when the Starke Circuit Court dismissed the charge as unconstitutional as applied and incapable of supporting a criminal conviction by written order dated June 30th, 2025.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 149 of the First Amended Complaint.**

150. As a result of the initiation and continuation of the criminal proceedings, Plaintiff was subjected to a continuing seizure within the meaning of the Fourth Amendment, including mandatory court appearances, compulsory compliance with court directives, and the ongoing restraint of her liberty pending adjudication.

**ANSWER: Defendants deny the allegations contained in Paragraph 150 of the First Amended Complaint.**

151. As a direct and proximate result of the malicious prosecution, Plaintiff suffered damages including loss of liberty, emotional distress, lost business revenue and clients, reputational harm, and the expenditure of substantial time and resources over an eleven-month period defending against a charge the court found unconstitutional.

**ANSWER: Defendants deny the allegations contained in Paragraph 151 of the First Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**COUNT VII-Procedural Due Process**
**(Fourteenth Amendment -- 42 U.S.C. §1983)**

152. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference, as though set fully herein, Paragraphs 1-151, inclusive, of their foregoing Answer as their answer to Paragraph 152 of the First Amended Complaint.**

153. Plaintiffs do not seek review of the correctness of judicial rulings rendered in state court, but instead challenge the procedural mechanisms, access restrictions, and administrative practices imposed outside the issuance of formal written orders, which deprived Plaintiffs of constitutionally adequate notice and a meaningful opportunity to be heard.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 153 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 153 of the First Amended Complaint.**

154. Defendants Hasnerl, Jesuit, Lockridge, Baker, and Poulos deprived Plaintiffs of procedural due process through arbitrary courtroom practices, restriction of public access, jurisdictional irregularities, and administrative failures, resulting in the denial of notice, a meaningful opportunity to be heard, access to the courts, and adjudication by a court acting without lawful jurisdiction.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 154 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form**

**a belief as to the truth or falsity of the allegations contained in Paragraph 154 of the First Amended Complaint.**

155. These deprivations were ongoing, discretionary, applied without written order, formal rule, and capable of repetition.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 155 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 155 of the First Amended Complaint.**

**Declaratory and Injunctive Relief - Standing and on-going harm**

156. At all relevant times, Defendant Hasnerl remains the presiding judicial officer of the Knox City Court and retains authority over courtroom management, access, motion practice, and trial procedures.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 156 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 156 of the First Amended Complaint.**

157. The practices challenged herein were imposed during Plaintiff's criminal proceedings and were not accompanied by any written order, formal rule, or subsequent corrective action clarifying constitutional limits or preventing recurrence.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 157 of the First Amended Complaint as they are not directed towards them. To the extent that**

**an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 157 of the First Amended Complaint.**

158. Plaintiff remains a resident of Starke County and may reasonably be subject to future proceedings in the Knox City Court. Because the challenged practices were imposed at the discretion of the presiding judge without articulated safeguards, Plaintiff faces a credible risk of being subjected to the same procedural deprivations in the future absent prospective declaratory and injunctive relief.

**ANSWER: Defendants make no answer as to the allegations contained in Paragraph 158 of the First Amended Complaint as they are not directed towards them. To the extent that an answer is required, Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 158 of the First Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**COUNT VIII - First Amendment Retaliation**
**(42 U.S.C. §1983)**

159. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference, as though set fully herein, Paragraphs 1-158, inclusive, of their foregoing Answer as their answer to Paragraph 159 of the First Amended Complaint.**

160. Plaintiff engaged in protected speech by verbally criticizing law enforcement conduct and asserting her constitutional rights during the April 21st, 2024 traffic stop.

**ANSWER: Defendants deny the allegations contained in Paragraph 160 of the First Amended Complaint.**

161. Defendants retaliated against Plaintiff for engaging in protected speech by threatening arrest, silencing her, and initiating criminal proceedings based on her speech.

**ANSWER: Defendants deny the allegations contained in Paragraph 161 of the First Amended Complaint.**

162. Defendants' retaliatory actions would deter a person of ordinary firmness from exercising First Amendment rights.

**ANSWER: Defendants deny the allegations contained in Paragraph 162 of the First Amended Complaint.**

163. At the time of the events described herein, it was clearly established that verbal criticism of law enforcement officers, absent physical interference or true threats, constitutes protected speech under the First Amendment, and that initiating or threatening criminal charges in retaliation for such speech violates clearly established constitutional rights.

**ANSWER: Defendants deny the allegations contained in Paragraph 163 of the First Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**COUNT IX - Municipal Liability**
**(Monell v. Department of Social Services -- 42 U.S.C § 1983)**

164. Plaintiffs re-allege and incorporate by reference all 'preceding paragraphs as if fully set forth herein.

**<u>ANSWER:</u> Defendants incorporate by reference, as though set fully herein, Paragraphs 1-163, inclusive, of their foregoing Answer as their answer to Paragraph 164 of the First Amended Complaint.**

165. Defendant Starke County is a municipal entity subject to liability under 42 U.S.C. § 1983.

**<u>ANSWER:</u> Defendants admit that Starke County is a municipal entity, but deny any conduct occurred in the underlying events that would lead to liability, and therefore, deny the remaining allegations contained in Paragraph 165 of the First Amended Complaint.**

166. At all relevant times, the Starke County Sheriff acted as a final policymaker for law enforcement practices within the Starke County Sheriff's Department.

**<u>ANSWER:</u> Defendants admit the allegations contained in Paragraph 166 of the First Amended Complaint.**

**A. Policy, Custom, or Practice**

167. At all relevant times, Starke County maintained customs, practices, or usages within the Starke County Sheriff's Department that included permitting deputies to conduct pretextual traffic stops, prolong encounters without reasonable suspicion, escalate encounters in response to verbal criticism or assertion of constitutional rights, and deploy canine units without adequate safeguards to ensure constitutional compliance.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 167 of the First Amended Complaint.**

**B. Notice**

168. Prior to the events giving rise to this action, Starke County was on notice of allegations of materially similar unconstitutional conduct by its deputies through at least one prior federal civil rights action brought by Plaintiff on or about 2022, which was resolved by settlement (Risner v. Biggs, Case No. 3:22-cv-663).

**ANSWER: Defendants deny the allegations contained in Paragraph 168 of the First Amended Complaint.**

169. Following the events involving Plaintiff in April 2024, Starke County was further placed on formal notice of materially similar allegations involving Defendant McKee through the filing of Singleton v. McKee, Case No. 3:24-cv-564, in July 2024.

**ANSWER: Defendants deny the allegations contained in Paragraph 169 of the First Amended Complaint.**

170. On July 8th,2025, eight days after the Starke Circuit Court dismissed the charge as unconstitutional as applied, Defendant Baker published a public statement characterizing the prosecution as demonstrating that the process worked, stating she disagreed with the constitutional ruling, and announcing she would take the ruling back to law enforcement.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 170 of the First Amended Complaint.**

**C. Deliberate Indifference and Failure to Act**

171. Starke County further failed to adequately train and supervise its deputies regarding (a) the constitutional limits on disorderly conduct charges involving protected speech, (b) the requirement of reasonable suspicion to prolong traffic stops, (c) the proper deployment and verification standards for canine alerts, and (d) the obligation to verify no-contact order status prior

to arrest when dismissal records are readily available.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 171 of the First Amended Complaint.**

172. Despite such notice from the Risner v. Biggs settlement in 2022, and the filing of the Singleton lawsuit in July 2024, Starke County failed to implement adequate corrective measures, including retraining, supervision, discipline, or interim restrictions, to prevent deputies from engaging in the same or similar unconstitutional conduct.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 172 of the First Amended Complaint.**

**D. Causation**

173. The customs, practices, and failures described herein were a moving force behind the constitutional violations suffered by Plaintiffs

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 173 of the First Amended Complaint.**

174. The failure to implement adequate training, supervision, and corrective measures directly contributed to Defendant McKee's conduct during the April 21, 2024 stop, the escalation of the encounter following Plaintiffs protected speech, the destructive vehicle search, and the initiation and continuation of criminal proceedings lacking probable cause.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 174 of the First Amended Complaint.**

175. As a direct and proximate result of Starke County's policies, customs, and deliberate indifference, Plaintiffs suffered the injuries and damages described herein.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 175 of the First**

**Amended Complaint.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief whatsoever, and in particular, deny that Plaintiffs suffered any deprivations warranting the requested relief, and requests that Plaintiffs take nothing by way of their First Amended Complaint, and for all just and appropriate relief.

**DAMAGES**

176. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs suffered compensable injuries.

**ANSWER: Defendants deny the allegations contained in Paragraph 176 of the First Amended Complaint.**

**A. Plaintiff Rebecca Risner**

177. Plaintiff suffered a deprivation of liberty, including unlawful detention, handcuffing, confinement in a patrol vehicle, and subjection to criminal prosecution that continued for approximately eleven months and was dismissed by written court order on June 30th,2025.

**ANSWER: Defendants deny the allegations contained in Paragraph 177 of the First Amended Complaint.**

178. Plaintiff suffered emotional distress, anxiety, humiliation, and mental anguish arising from the traffic stop, detention, arrest of her husband, and the prolonged criminal proceedings that followed.

**ANSWER: Defendants deny the allegations contained in Paragraph 178 of the First Amended Complaint.**

179. Plaintiff operates a residential house cleaning business in Starke County that depends upon client trust and access to clients' homes. As a direct result of the filing and pendency

of the Disorderly Conduct charge, Plaintiff suffered the loss of established clients and associated business revenue over the period of the prosecution, none of whom returned following dismissal of the charge. Plaintiff also expended substantial time and effort - estimated at more than 2,700 hours over the period of the criminal defense and subsequent federal litigation - addressing the consequences of Defendants' actions, including time lost from business operations, family life, and personal pursuits.

**ANSWER: Defendants deny the allegations contained in Paragraph 179 of the First Amended Complaint.**

180. Plaintiff incurred out-of-pocket financial losses, including costs associated with defending against the criminal charge, obtaining records, preparing filings, attending court proceedings, and related expenses.

**ANSWER: Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 180 of the First Amended Complaint.**

181. Plaintiff suffered reputational harm and stigma resulting from the filing and pendency of a criminal charge that was ultimately dismissed as unconstitutional.

**ANSWER: Defendants deny the allegations contained in Paragraph 181 of the First Amended Complaint.**

182. Plaintiff also suffered property damage to her vehicle, resulting in repair costs and loss of value, caused by Defendants' search of her vehicle on April 21st, 2024.

**ANSWER: Defendants deny the allegations contained in Paragraph 182 of the First Amended Complaint.**

**B. Co-Plaintiff Jeremy Risner**

183. Co-Plaintiff suffered an unlawful arrest and deprivation of liberty based on an inaccurately maintained No-Contact Order, resulting in incarceration and loss of freedom for more than twenty-four hours.

**<u>ANSWER:</u> Defendants deny the allegations contained in Paragraph 183 of the First Amended Complaint.**

184. At the time of his arrest on April 21, 2024, Co-Plaintiff had been formally diagnosed with Post-Traumatic Stress Disorder (PTSD) by a licensed medical provider and had been determined to be disabled by the Social Security Administration pursuant to 42 U.S.C. §423 on the basis of that condition.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 184 of the First Amended Complaint.**

185. Following his arrest and incarceration, Co-Plaintiff experienced a worsening of his PTSD symptoms, including increased anxiety, panic episodes, sleep disturbances, and nightmares.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 185 of the First Amended Complaint.**

186. Co-Plaintiff's treating medical provider is aware of the impact the April 21st, 2024 arrest and incarceration had on Co-Plaintiff's condition and psychological stability.

**<u>ANSWER:</u> Defendants lack sufficient knowledge and information so as to form a belief as to the truth or falsity of the allegations contained in Paragraph 186 of the First Amended Complaint.**

187. Co-Plaintiff suffered emotional distress, humiliation, and mental anguish

associated with his arrest, incarceration, and the circumstances under which those events occurred.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 187 of the First Amended Complaint.**

188. Co-Plaintiff suffered damage to the marital relationship, including loss of companionship and emotional support, resulting from the prolonged prosecution and its impact on Plaintiff's ability to participate in family life.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 188 of the First Amended Complaint.**

**C. Joint and Additional Damages**

189. Plaintiffs suffered loss of companionship, emotional support, and familial relations as a result of the unlawful arrest, detention, and prosecution.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 189 of the First Amended Complaint.**

190. Defendants' conduct was willful, reckless, or in callous disregard of Plaintiffs' constitutional rights, entitling Plaintiffs to an award of punitive damages against the individual Defendants to the extent permitted by law.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 190 of the First Amended Complaint.**

191. Plaintiffs seek compensatory damages in an amount to be determined by a jury, punitive damages against appropriate individual Defendants, costs, reasonable attorney's fees pursuant to 42 U.S.C. § 1988 should counsel appear later on behalf of Plaintiffs, and such other relief as the Court deems just and proper.

**ANSWER:** **Defendants deny that Plaintiffs are entitled to any relief whatsoever and**

**therefore, deny the allegations contained in Paragraph 191 of the First Amended Complaint.**

Respectfully submitted,

/s/ Katlyn M. Christman
Katlyn M. Christman (#34670-64)

CLARK JOHNSON & KNIGHT, LTD.
Attorneys for Defendants
233 E. 84th Drive, Suite 301
Merrillville, IN 46410
Phone: 219.322.0830; Fax: 219.322.0834
Email: KChristman@cjklaw.com

## AFFIRMATIVE DEFENSES

Defendants, STARKE COUNTY, PATRICK MCKEE, and JUSTIN MCDANIEL, by and through their attorneys, CLARK JOHNSON & KNIGHT, LTD., and in further Answer to Plaintiffs' First Amended Complaint [DE #17], sets forth the following Affirmative Defenses:

### FIRST AFFIRMATIVE DEFENSE

At all relevant times, Deputy McKee's and Deputy McDaniel's actions were reasonable in light of the circumstances presented and they were not otherwise on notice of any alleged constitutional deprivation and thus, they are entitled to qualified immunity.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs failed to mitigate their injuries and/or damages.

### THIRD AFFIRMATIVE DEFENSE

The allegations in Plaintiffs' First Amended Complaint against Defendants fail to state a claim upon which relief may be granted as it relates to Plaintiff's First, Fourth, and Fourteenth Amendment claims.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Fourth Amendment claims against Defendants are barred by the existence of probable cause and/or reasonable suspicion under the Fourth Amendment.

**FIFTH AFFIRMATIVE DEFENSE**

All state law claims against Deputy McKee and Deputy McDaniel in their individual capacities are barred under Ind. Code § 34-13-3-5(b) as they were acting in the course and scope of their employment at all relevant times.

**SIXTH AFFIRMATIVE DEFENSE**

Deputy McKee and Deputy McDaniel are immune from any and all of Plaintiffs' state law claims pursuant to the Indiana Tort Claims Act, Ind. Code § 34-13-3-3(a)(6), for any loss that results from the initiation of a judicial proceeding.

**SEVENTH AFFIRMATIVE DEFENSE**

Deputy McKee and Deputy McDaniel are immune from any and all of Plaintiffs' state law claims pursuant to the Indiana Tort Claims Act, Ind. Code § 34-13-3-3(a)(7), for any loss that results from the performance of a discretionary function.

**EIGHTH AFFIRMATIVE DEFENSE**

Deputy McKee and Deputy McDaniel are immune from any and all of Plaintiffs' state law claims pursuant to the Indiana Tort Claims Act, Ind. Code § 34-13-3-3(a)(8), for any loss that results from the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations).

**NINTH AFFIRMATIVE DEFENSE**

Deputy McKee and Deputy McDaniel are immune from any and all of Plaintiffs' state law claims pursuant to the Indiana Tort Claims Act, Ind. Code § 34-13-3-3(a)(10), for any and all

losses that results from the act or omission of an individual other than those employed by the governmental entity.

**TENTH AFFIRMATIVE DEFENSE**

The contributory fault of Plaintiffs operates as a complete bar to the recovery of Plaintiffs with respect to any state law claims directed against these Defendants in this action. Contributory negligence operates as a complete bar with respect to these Defendants, as the Comparative Fault Act does not apply in the context of governmental entities and their employees.

**ELEVENTH AFFIRMATIVE DEFENSE**

Upon information and belief, Plaintiffs voluntarily incurred and/or assumed a risk.

**TWELFTH AFFIRMATIVE DEFENSE**

Defendants raise the defense of consent, in that Plaintiff consented to exiting the vehicle and otherwise to all searches performed on April 21, 2024, which serves as a total bar to all claims asserting to the contrary in the First Amended Complaint.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Starke County is not a proper party Defendant as it is independent from the Starke County Sheriff's Department.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Any allegations of Plaintiffs' First Amended Complaint not specifically admitted, denied, or otherwise controverted, are hereby denied.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Defendants reserve the right to plead additional Affirmative Defenses as they become known to them based on the applicable rules.

WHEREFORE, Defendant, STARKE COUNTY, PATRICK MCKEE, and JUSTIN MCDANIEL, deny that Plaintiffs are entitled to any relief whatsoever against Defendants and pray that this Court enter judgment in their favor and against Plaintiffs upon all claims, that costs be awarded for defending this litigation, and/or any other relief deemed just and proper.

**JURY DEMAND**

Defendant, STARKE COUNTY DEPUTY SHERIFF PATRICK MCKEE, demands trial by jury.

Respectfully submitted,

/s/ Katlyn M. Christman
Katlyn M. Christman (#34670-64)

CLARK JOHNSON & KNIGHT, LTD.
Attorneys for Defendants
233 E. 84th Drive, Suite 301
Merrillville, IN 46410
Phone: 219.322.0830; Fax: 219.322.0834
Email: KChristman@cjklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

- Matthew B. Knight, MKnight@cjklaw.com, jcorbett@cjklaw.com
- Katlyn M. Christman, KChristman@cjklaw.com, shazi@cjklaw.com
- Timothy M. Hamilton, Timothy.Hamilton@atg.in.gov
- Gustavo A. Jimenez, Gustavo.Jimenez@atg.in.gov
- Robert T. Keen, Jr., rtk@barrettlaw.com

**MANUAL NOTICE:** Rebecca Risner & Jeremy Risner, 3860 S. 300 E., Knox, IN 46534

/s/ Katlyn M. Christman

26-04-24 Ans & Aff Defs 8654