UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| REBECCA RISNER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STARKE COUNTY, *et al.*,<br><br>Defendants. | Case No. 3:26-cv-00208-CCB-SJF |

# STATE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

State Defendants, Starke County Prosecutor Leslie Baker, Starke County Chief Deputy Prosecutor Thomas Poulos, and Knox City Court Judge Charles Hasnerl, by counsel, Deputy Attorney General Timothy M. Hamilton, respectfully move the Court to dismiss them from this action.

## INTRODUCTION

Plaintiffs, Rebecca Risner and Jeremy Risner, initiated this lawsuit against the Starke County Board of Commissioners, Starke County Sheriff's Deputies Patrick McKee and Justin McDaniel, Knox City Court Clerk Angela Jesuit, and Knox City Court Bailiff Taylor Lockridge on February 19, 2026. [ECF 1]. Plaintiffs also sued Knox City Court Judge Charles Hasnerl ("Judge Hasnerl"), Starke County Prosecutor Leslie Baker ("Prosecutor Baker"), and Starke County Chief Deputy Prosecutor Thomas Poulos (Deputy Prosecutor Poulos") (collectively "State Defendants"). [*Id.*]. Plaintiffs filed an Amended Complaint on March 25, 2026. [ECF 17]. In short, Plaintiffs bring nine causes of action against various defendants as a result of a traffic stop where Deputies searched the Plaintiffs' vehicle after a drug dog alerted, Jeremy Risner's arrest during the stop, and Rebecca Risner's subsequent prosecution for disorderly conduct, of which she was

acquitted. [ECF 17 at ¶¶ 18, 33, 43, 52, 89]. Of these nine causes of action, three seem to apply to State Defendants. [ECF 17 at 19-21, 25-28].

First, Plaintiffs claim in Count III that Prosecutor Baker "in her administrative capacity" failed to supervise the Victim Advocate responsible for maintaining the "no-contact order file," resulting in Jeremy Risner's arrest under an "inaccurate no-contact order," thus violating the Fourteenth Amendment due process clause [ECF 17 at 19-21]. Second, Plaintiffs claim in Count VII that all State Defendants, along with Defendant Jesuit and Defendant Lockridge, violated their Fourteenth procedural due process rights through "arbitrary courtroom practices, restriction of public access, jurisdictional irregularities, and administrative failures, resulting in the denial of notice, a meaningful opportunity to be heard, access to the courts, and adjudication by a court acting without lawful jurisdiction." [ECF 17 at 25-27]. As a remedy, Plaintiffs request declaratory and injunctive relief, asking this Court to "retain jurisdiction to enforce the declaratory judgment if Plaintiff [Rebecca Risner] appears in future proceedings before [Judge] Hasnerl." [*Id*.]. Third, in Count VIII, Plaintiffs allege that "responsible Defendants" retaliated against Plaintiff Rebecca Risner for her engaging in "protected speech by verbally criticizing law enforcement" when she was threatened with arrest and initiating criminal proceedings against her, based on her speech. [ECF 17 at 27-28].

However, Plaintiffs either fail to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) or lack standing to bring such claims under Federal Rule of Civil Procedure 12(b)(1) on all their claims against State Defendants. Therefore, Plaintiffs' claims against State Defendants, as discussed below, must be dismissed.

## RELEVANT FACTUAL ALLEGATIONS[1]

[1] As required on a motion to dismiss, State Defendants take the allegations of the Complaint as true only for purposes of this motion. State Defendants reserve the right to contest any factual allegation at a later date in this litigation, if necessary.

***Stop and Search of Plaintiffs' Vehicle, and Plaintiff Jeremy Risner's Arrest***

On April 21, 2024, Starke County Sheriff's Deputy Patrick MacKee initiated a traffic stop on Plaintiffs vehicle at approximately 12:30 AM.[2] [ECF 17 at ¶ 18; *See* State Docket for 75H01-2407-CM-000714; Ex. A, Probable Cause Affidavit; Ex. C, Final Order on Defendant's Motion to Suppress and Dismiss in Cause No. 75C01-2503-CM-001, at ¶ 16]. Plaintiff Rebecca Risner questioned the legality of the stop. [ECF 17 at ¶ 25; Ex. C at ¶ 4]. During this stop, Deputies developed probable cause to search the vehicle after a drug canine alerted to the presence of narcotics, over Plaintiff Rebecca Risner's protest. [ECF 17 at ¶33-34; Ex. C at ¶¶ 17-20]. Plaintiff Jeremy Risner was removed from the vehicle and, after deputies ran Plaintiff Jeremy Risner's information and learned of a no-contact order between Plaintiffs, he was arrested under the no-contact order in case 75C01-2109-F5-000029. [ECF 17 at ¶¶ 32, 43; *see* Ex. B, September 15, 2021 Order in 75C01-2109-F5-000029]. During the arrest of Jeremy, Rebecca informed Deputies that the no-contact was no longer valid, as the case had been dismissed in July 2022, and she offered to show this via public court records.[3] [ECF 17 at ¶ 42; *see* Ex. D, July 15, 2022 Order of Dismissal in 75C01-2109-F5-000029]. Deputies handcuffed and placed Rebecca in a patrol vehicle while officers searched Plaintiffs' vehicle. [ECF 17 at ¶¶ 45-46]. After completing the vehicle search, Deputies removed Rebecca from the patrol vehicle, removed the handcuffs, and informed Rebecca she could leave. [ECF 17 at ¶ 47]. Rebecca again disputed Jeremy's arrest, but Deputies "warned" her to leave the area. [*Id.*]. Plaintiff Jeremy Risner was taken to the Starke

---

[2] State Defendants asks the court to take judicial notice of the CCS in State Cases 75C01-2109-F5-000029, 75H01-2407-CM-000714, and 75C01-2503-CM-000001. *Parungao v. Cmty. Health Sys.*, 858 F.3d 452,457 (7th Cir. 2017). State Defendants provide documents related to all State Cases as a convenience to the court. They do not construe this filing as a Motion for Summary Judgment under Fed. R. Civ. P 12(d). *See Anderson v. Village of Glenview*, 821 Fed.Appx. 625, 627 (7th Cir. 2020) ("Ordinarily, district courts are confined to the pleadings on such a motion, but courts may consider outside exhibits that are central to the plaintiff's claim and referred to in the complaint, even if supplied by the defendants").

[3] While the Court did order that the no-contact order be dismissed as well on July 15, 2022, the Order Terminating the No Contact Order was not entered onto the Docket until April 22, 2024, the day after Plaintiff Jeremy Risner's arrest. *See* State Court Docket in 75C01-2109-F5-000029 at April 22, 2024.

County Justice Center, where he was released on April 22, 2024 "after verification confirmed the [no-contact] order" was dismissed. [ECF 17 at ¶¶ 48-49; *See also* State Court Docket in 75C01-2109-F5-000029 at April 22, 2024].

***Criminal Charges Brought in Knox City Court***

On July 22, 2024, a Class B misdemeanor Disorderly Conduct charge was brought against Plaintiff Rebecca Risner in the Knox City Court. [ECF 17 at ¶ 52; *see* State Court Docket in 75H01-2407-CM-000714]. On July 30, 2024, an initial hearing was scheduled for October 1, 2026. [State Court Docket in 75H01-2407-CM-000714]. Rebecca received notice of the initial hearing via mail, but did not receive a summons. [ECF 17 at ¶ 53]. Rebecca appeared at the initial hearing in the Knox City Court where she entered a plea of not guilty. [ECF 17 at ¶ 54; State Court Docket in 75H01-2407-CM-000714 at October 1, 2024]. After the initial hearing, Rebecca spoke with Deputy Prosecutor Poulos "in an office with the door open" where a "third party" who had attended the prior hearing recorded the conversation and posted the conversation to YouTube at some point after this meeting and prior to Rebecca's first pretrial conference on November 19, 2024. [ECF 17 at ¶¶ 55-56]. At the November 19 pretrial conference, Rebecca states that Deputy Prosecutor Poulos "reprimanded" her for "illegally recording" and publishing the October 1 conversation, which she denied making the recording. [ECF 17 at ¶ 57]. Deputy Prosecutor Poulos informed Rebecca that she could accept a plea agreement or proceed to trial because of the posted recording. [ECF 17 at ¶ 58].

On January 4, 2025, Rebecca filed a Motion to Dismiss her criminal charge. [ECF 17 at ¶ 60]. At a January 14, 2025, pre-trial conference, Plaintiff challenged a "defect" in the charging information, the Knox City Court's subject matter jurisdiction over the case and requested a bench trial; the Knox City Court set a hearing on the Motion to Dismiss for February 4, 2025. [ECF 17 at ¶ 61-63; State Court Docket in 75H01-2407-CM-000714]. At the Motion to Dismiss hearing,

Knox City Court Judge Hasnerl ruled against Rebecca without hearing argument on her motion, stating the hearing's purpose was to rule on the motion and that her arguments "regarding defects in the charging information were irrelevant."[4] [ECF 17 at ¶ 65; Docket in 75H01-2407-CM-000714]. Rebecca was also given her criminal summons in court at this hearing. [Docket in 75H01-2407-CM-000714]. On February 10, 2025, Rebecca filed a jury trial demand in the Knox City Court and requested a written finding of fact and conclusion of law. [ECF 17 at ¶ 66; Docket in 75H01-2407-CM-000714]. While granting the jury trial demand, the request for written order on the Motion to Dismiss was denied, as the Knox City Court is a court of no record. [ECF 17 at ¶ 67; Docket in 75H01-2407-CM-000714 at February 19, 2025]. After telling the Knox City Court that it "lacked jurisdiction" to conduct a jury trial, Rebecca was informed that the Knox City Court indeed did have jurisdiction to hold a jury trial but she could file for venue change to the Starke County Circuit Court, which she did. [ECF 17 at ¶¶ 68-71; Docket in 75H01-2407-CM-000714]. Rebecca's Motion to Transfer the case to Circuit Court was granted on February 19, 2025. [Docket in 75H01-2407-CM-000714].

***Starke Circuit Court and Dismissal of Criminal Case***

The Starke Circuit Court opened the newly transferred case on March 13, 2025. [ECF 17 at ¶ 74; State Court Docket in 75C01-2503-CM-000001]. Prior to an initial hearing on April 11, 2025, in the Starke Circuit Court, Plaintiff filed a motion to dismiss, again raising that she was initially charged under Ind. Code. § 35-45-1-3(a)(1) instead of I.C. § 35-45-1-3(a)(2). [ECF 17 at ¶ 76]. At the hearing, the Magistrate Judge asked if the State had filed the amended information prior to the hearing and Deputy Prosecutor Poulos allegedly stated that "he believed [it] had

[4] The "irregularities" in the initial Charging Information was that Rebecca was charged under Indiana Code § 35-45-1-3(a)(1), which is Disorderly Conduct for engaging in fighting or tumultuous conduct. However, she should have been charged under I.C. § 35-45-1-3(a)(2), Disorderly Conduct for making unreasonable noise and continues to do so after being asked to stop. An amended information was filed with the Knox City Court on April 11, 2025. *See* State Court Docket in 75H01-2407-CM-000714.

already been filed." [*Id*. at ¶ 77]. The amended information was filed that day with the Knox City Court at 10:24 AM and the Starke Circuit Court at 11:36 AM. [*Id*. at ¶¶ 78-79; *See* State Court Dockets in 75H01-2407-CM-000714, 75C01-2503-CM-000001]. Rebecca sent a discovery request on May 12, 2025, requesting documents related to the deputies involved in the incident, to which Prosecutor Baker replied that no such records were in the State's possession. [ECF 17 at ¶¶ 80-81]. On the same day, Rebecca filed a motion to suppress and motion to dismiss, which the Circuit Court scheduled for a hearing on June 16, 2025. [*Id*. at ¶¶ 82-83; Docket in 75C01-2503-CM-000001].

At the June 16 hearing, the Circuit Court heard Rebecca's motion to dismiss and motion to suppress. [ECF 17 at ¶¶ 83-88; Docket in 75C01-2503-CM-000001]. In the hearing, Deputy McKee testified and video evidence of the April 21, 2024 event was presented to the Circuit Court, which took the parties arguments under advisement. [*Id*.]. On June 30, 2026, the Circuit Court dismissed Rebecca's Disorderly Conduct charge. [ECF 17 at ¶ 89; Docket in 75C01-2503-CM-000001; *see also*, Ex. C at 10]. In the Order, the Circuit Court denied Rebecca's motion to suppress, finding the stop and search of Plaintiffs' vehicle were lawful. [Ex. C at ¶¶ 10–16, 17-20]. The Circuit Court also dismissed Rebecca's Disorderly Conduct charge, finding that I.C.§ 35-45-1-3(a)(2) unconstitutional as applied to her conduct from the April 21, 2024 event. [Ex. C at ¶ 31].

***Facebook Posts and Comments***

On July 8**,** 2025, Prosecutor Baker made a public Facebook post about the Circuit Court's ruling, linking the public docket in 75C01-2503-CM-000001. [ECF 17 at ¶ 91; *see also* Ex. E, July 8, 2025 and August 11, 2025 Facebook Posts, at 1[5]]. In the post, Prosecutor Baker stated that,

[5] State Defendants ask the Court to take judicial notice of, or incorporate-by-reference into Plaintiffs' complaint, Prosecutor Baker's Facebook posts and corresponding comments from July 8, 2025, and August 11, 2025. *See Gardener v. MeTV,* 681 F. Supp. 3d 864, 867 (N.D. Ill. 2023) n. 2 (court taking judicial notice or, in the alternative, incorporating-by-reference, defendant's website when the plaintiffs' made reference to it in their complaint); *see also Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012) ("the incorporation-by-

while she disagreed with it, she respected the Circuit Court's ruling, that the judicial process worked, and that she would take ruling back to law enforcement. [ECF 17 at ¶¶ 92-94; Ex. E at 1]. Rebecca commented on the post, stating that Prosecutor Baker's post was "less like professional discourse and more like a veiled threat" and asking Prosecutor Baker to "respect the [Circuit] Court's ruling and leave [her] alone. [Ex. E at 2]. Prosecutor Baker did not respond to this post. [Ex. E at 2].

On August 11, 2025, Prosecutor Baker made another Facebook post on her public page about the guilty plea of David Risner for Level 4 Felony Methamphetamine Possession. [Ex. E at 3]. Rebecca publicly commented on this post, "in response to public commentary" about her recent prosecution. [ECF 17 at ¶ 95; Ex. E at 4-6, 8]. Prosecutor Baker then responded to Rebecca's comment, stating that Rebecca was the reason Jeremy was criminally charged. [ECF 17 at ¶ 95; Ex. E at 9]. Rebecca replied, stating that Prosecutor Baker's office should bear full responsibility for Jeremy being arrested on April 21, 2024, as it was the Office's responsibility to withdraw no-contact orders; Prosecutor Baker stated that her Office was not responsible for withdrawing no-contact orders, as this is the role of the Circuit Court. [Ex. E at 9-10]. Rebecca responded, criticizing Prosecutor Baker's and her Office's handling of no-contact orders and accusing Prosecutor Baker of "trying to shame" her and "mocking" the presumption of innocence. [Ex. E at 10-13]. Prosecutor Baker and Rebecca continued to exchange comments on the post, continuing to assert their positions about who is responsible for vacating no-contact orders and Rebecca's

---

reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment"); *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (finding that where a party refers to another party's website in its briefing, the district court may take judicial notice of the entire contents of that website); *Al -Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 869 (N.D. Cal. 2022) (court taking judicial notice of a party's public twitter account posts for Motion to Dismiss purposes). Screenshots of the Facebook posts are provided for the Court's convenience as Exhibit E.

now dismissed criminal case. [Ex. E at 13-21]. Rebecca alleges that, in response to the comments on the August 11 post, Prosecutor Baker took down her Facebook page. [ECF 17 at ¶¶ 99-100].[6]

## LEGAL STANDARD

### I. Rule 12(b)(1) Standard

Under Federal Rule of Civil Procedure 12(b)(1), a complaint should be dismissed where the federal courts "lack subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). In reviewing a 12(b)(1) motion, courts must accept all well-pleaded factual allegations as true when the motion challenges the sufficiency of the court's subject matter jurisdiction. *Transit Exp., Inc v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). "The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter jurisdiction exists for his or her claims." *Pena v. Indianapolis Pub. Sch. Corp.*, 2019 WL 2451652, at *3 (S.D. Ind. June 12, 2019); *see Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

### II. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, the Court "is not bound by the nonmoving party's legal characterizations of the facts." *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). Courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287

[6] While Plaintiff claims that the Prosecutor Baker "deleted" the page [ECF 1 at ¶ 99], Prosecutor Baker's public Facebook page is currently available to the public, including both the July 8 and August 11, 2025 Post and corresponding comments. *See generally* https://www.facebook.com/bakerforprosecutor

F.3d 656, 658 (7th Cir. 2002). In other words, "the complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Feresu v. Indiana U. Bloomington*, 2015 WL 5177740, at *1 (S.D. Ind. Sept. 3, 2015) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir.2009) (citation and quotation marks omitted). In resolving a Rule 12(b)(6) motion, the Court may consider documents attached to the complaint, documents referenced in and central to the complaint, and matters subject to judicial notice. *See* Fed. R. Civ. P. 10(c); *Orgone Cap. Ill, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned when ruling on a motion to dismiss. *Parungao v. Cmty. Health Sys.*, 858 F.3d 452,457 (7th Cir. 2017).

To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The 'short and plain statement' must be enough 'to give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Killingsworth v. HSBC Bank Nevada*, N.A., 507 F.3D 614, 618 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "[T]he factual allegations in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Killingsworth,* 507 F.3d at 618 (quoting *Twombly*, 550 U.S. at 555) (other citations omitted). "In addition, a plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co*., 521 F.3d 686, 699 (7th Cir. 2008) (citing *McCready v. eBay, Inc*., 453 F.3d 882, 888 (7th Cir. 2006)).

**ARGUMENT**

All claims against State Defendants must be dismissed, as Plaintiffs have either failed to state a claim under Fed. R. Civ. P. 12(b)(6) or lack standing to bring the claim under, thus the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Plaintiffs' claims against

Prosecutor Baker and Deputy Prosecutor Poulos fail. First, Plaintiffs lack standing to assert claims for damages for any constitutional violations of their spouses' rights, as a party generally lacks standing to assert the civil rights of a third-party. Second, any due process or First Amendment violation claims also fail, as all actions taken in initiating and sustaining a prosecution against Plaintiff Rebecca Risner are squarely within the prosecutorial function of both Prosecutor Baker and Deputy Prosecutor Poulos. Third, any attempt to sue Prosecutor Baker or Deputy Prosecutor Poulos in their official capacities fail, as they are not "persons" for the purposes of § 1983. Additionally, Prosecutor Baker, or her Office, is not responsible for the maintenance or management of the Protective Order Registry, as this falls under the Indiana Courts by statute. Even if Prosecutor Baker's Office was responsible for the maintenance of the registry, Plaintiffs allege that she failed to adequately supervise her employees responsible for maintaining the registry, which does not rise to a constitutional violation for § 1983 purposes. Even if both assertions were viable causes of actions, Plaintiffs still failed to state a claim because the alleged conduct does not rise beyond that of negligence. Finally, any attempt to argue that Prosecutor Baker violated Plaintiffs' First Amendment rights by taking down her Facebook page also fails, as Plaintiffs only allege that Prosecutor Baker closed the designated public forum.

As for Plaintiffs' request for relief against Judge Hasnerl, this also fails under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). First, as Plaintiff Jeremy Risner was never subject to any case in Knox City Court nor does he allege that he will be subject to its jurisdiction; therefore, he lacks standing to request declaratory relief or an injunction against Judge Hasnerl for his Courtroom procedures. Next, as for Plaintiff Rebecca Risner, she fails to allege any due process violations on the part of Judge Hasnerl, as the entire proceeding was in accordance with Indiana law. Plaintiff Rebecca Risner also brings only official capacity claims against Judge Hasnerl, which is a suit against the

state and is barred by the Eleventh Amendment, therefore she is not entitled to a declaratory judgment. Plaintiff Rebecca Risner lacks standing to request an injunction against any Knox City Court or Judge Hasnerl's courtroom practices, as she cannot demonstrate a realistic probability that she will again be subject to the same injurious conduct. Because of the foregoing reasons, the Court should dismiss all Plaintiffs' claims against State Defendants with prejudice.

## I. All Claims Against State Defendants Should Be Dismissed.

### A. § 1983 Standard and Standing.

To prevail under 42 U.S.C. § 1983, a plaintiff must establish that the defendants deprived him of a constitutionally secured right and that the defendants were acting under the color of state law. *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003). Section 1983 does not grant substantive rights; however, it provides a conduit in which to vindicate constitutionally or statutorily conferred rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Therefore, a plaintiff must identify the constitutional right that was infringed in order to have an actionable claim under the statute. *Albright*, 510 U.S. at 271 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).

#### 1. Plaintiffs Lack Standing to Sue on Behalf of Each Other.

Any attempt for Plaintiffs to sue under § 1983 on behalf of each other must fail, as they each lack standing to challenge an alleged constitutional violation on the other's behalf. Article III, § 2 of the U.S. Constitution limits federal court's jurisdiction to cases or controversies. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017). To have standing to sue in federal court, the plaintiff must show (1) that she suffered a concrete and particularized injury that is either actual or imminent; (2) that the injury is fairly traceable to the defendant; and (3) that a favorable decision will likely redress the injury. *Id*. Generally, a litigant lacks standing to vindicate the constitutional rights of third parties. *Singleton v. Wulff*, 428 U.S. 106, 114 (1976); *see also*

*Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties").

Throughout the complaint, it is unclear as to which of the Plaintiffs is attempting to seek redress for which alleged violations. While only Plaintiff Rebecca Risner allegedly had her rights violated through the prosecution in Knox City Court, both Plaintiffs request declaratory against all State Defendants, injunctive relief against Judge Hasnerl, and damages. [ECF 17 at 26, 27-28]. However, Plaintiff Jeremy Risner lacks standing to vindicate the constitutional rights of his wife, who clearly is capable of vindicating her rights in this suit. *See Powers*, 499 U.S. at 411 (holding that to have standing to sue on behalf of a third party, there must be some hinderance to the third party's ability to protect his or her own interest). Any claims by Plaintiff Jeremy Risner to sue for alleged injuries that occurred to Plaintiff Rebecca Risner, or vice versa, must be dismissed for lack of standing under Fed. R. Civ. P. 12(b)(1).

### B. Plaintiffs' Claims Against Prosecutor Baker and Deputy Prosecutor Poulos

#### 1. Official Capacity Claims Against Prosecutor Baker and Deputy Prosecutor Poulos Must Be Dismissed.

Any official capacity claim against Prosecutor Baker or Deputy Prosecutor Poulos fails, as they are not a "person" for § 1983 purposes and the claims are barred by the Eleventh Amendment. Throughout their Complaint, it is unclear as to what constitutional claims are raised against Prosecutor Baker or Deputy Prosecutor Poulos in either their individual or official capacity, as Plaintiffs' never state as such in any cause of action but only list in the heading that both Defendants are sued under both capacities. Section 1983 provides that:

> Every ***person*** who, under the color of [law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (emphasis added). Critically, Prosecutor Baker and Deputy Prosecutor Poulos, in their official capacity, are not a "person" for purposes of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Omosegbon v. Wells*, 335 F.3d 668, 672-73 (7th Cir. 2003); *Higgins v. Mississippi*, 217 F.3d 951, 953 (7th Cir. 2000). *See also Everling v. Ragains*, No. 1:14-CV-00024-TWP, 2015 WL 1319707 at *3 (S.D. Ind. Mar. 23, 2015) (Dismissing all official capacity claims against defendant prosecutors, as they act as state officials when prosecuting a criminal case). As such, any official capacity claims against Prosecutor Baker or Deputy Prosecutor Poulos must be dismissed for failing to state a claim under Fed. R. Civ. P. 12(b)(6).

Additionally, any claim that can be construed as against the Starke County Prosecutor's Office is barred by the Eleventh Amendment. "Eleventh Amendment issues arise whenever a private citizen files a federal lawsuit against a state, a state agency, or a state official-although the effect of the amendment differs depending on the category of defendant." *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir.1992). The Eleventh Amendment "grants states immunity from private suits in federal court without their consent." *Nuñez v. Ind. Dept. of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016); *Peirick v. Indiana U. Purdue U. Indianapolis Athletics Dept.*, 510 F.3d 681, 694–95 (7th Cir. 2007). State agencies effectively are the State and are granted state immunity under the Eleventh Amendment. *See Gleason v. Board of Educ.*, 792 F.2d 76, 79 (7th Cir.1986); *Davidson v. Board of Govs.*, 920 F.2d 441, 442 (7th Cir.1990); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984) (holding that the Eleventh Amendment "deprives federal courts of any jurisdiction to entertain" suits against the states). State officials, including prosecutors, cannot be sued in their official capacity for damages, as these suits are effectively

against the state itself. *Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021). Any of Plaintiffs' claims that can be construed to be against the Prosecutor's Office directly must be dismissed for failing to state a claim.

**2. Any Individual Capacity Claims Against Prosecutor Baker and Deputy Prosecutor Poulos for Plaintiff Rebecca Risner's Prosecution Must Be Dismissed, As They Both Have Absolute Prosecutorial Immunity Against All § 1983 Claims**

Any individual capacity claim brought under § 1983 fails to state a claim, as both Prosecutor Baker and Deputy Prosecutor Poulos have absolute prosecutorial immunity. Prosecutors are absolutely immune from civil liability based on performance of their prosecutorial function, such as initiating criminal charges. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). Prosecutors are absolutely immune from civil liability based on performance of the prosecutorial function, even malicious prosecution unsupported by probable cause. *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017) (citing *Imbler*, 42 U.S. at 427); see also *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2006) ("[A]bsolute immunity shields prosecutors even if they act 'maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'") (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)). Absolute immunity shields prosecutors for activities which are "intimately associated with the judicial phase of the criminal process." *Imbler*, 42 U.S. at 430. Any action that falls within the "scope of prosecutorial duties" is protected by absolute immunity. *Petry v. Lawler*, 718 F. Supp. 1396, 1398 (S.D. Ind. 1989).

The immunity is derivative of the immunity granted to judges and is designed to protect officials from harassing litigation that might interfere with the independent exercise of prosecutorial discretion. *See Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Imbler*, 424 U.S. at 409. Prosecutorial immunity is absolute and "defeats a suit at the outset, so long as the official's

actions were within the scope of the immunity." *Imbler*, 424 U.S. at 419 n.13. Prosecutorial immunity protects functions such as initiating and presenting the state's case (*see Imbler*, 424 U.S. at 409).

Here, Plaintiffs filed their suit in response to Prosecutor Defendants conducting their prosecutorial duties in Starke County. Prosecutors bringing charges and sustaining a prosecution—even if the probable cause was lacking—fits squarely within the core functions of prosecutorial actions. *Smith*, 346 F.3d at 742. Bringing and prosecuting the charges fits on the immunity "side of the line" that is "intimately associated with the judicial phase of the criminal process." *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir, 2012). Bringing charges is not an administrative or investigatory act, which are not entitled to absolute immunity. *Id*. Instead, bringing charges and prosecuting Plaintiff Rebecca Risner under these charges is conduct "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. While it is unclear as to what conduct Prosecutor Baker or Deputy Prosecutor Poulos did that allegedly violated Plaintiff Rebecca Risner's First or Fourteenth Amendment Rights, all conduct alleged—including alleged procedural failures that allegedly violated due process, and the sustainment of a prosecution that Plaintiffs believed lacked probable cause or in retaliation for her speech—happened during the judicial phase of the criminal proceeding. *See Davis v. Zirkelbach*, 149 F.3d 614, 617 (7th Cir. 1998) (absolute immunity applied to prosecutor's decision to maintain prosecution even after learning that prosecution was illegal or unsupported). However, bringing and sustaining criminal charges against fits well within the "scope of prosecutorial duties" that absolute immunity protects. *Petry* ,718 F. Supp. at 1398. Absolute prosecutorial immunity bars Plaintiffs' § 1983 claims related to Rebecca Risner's prosecution, therefore, Plaintiffs have failed to state a claim under Fed. R.

Civ. P 12(b)(6). All Plaintiffs' claims against Prosecutor Baker and Deputy Prosecutor Poulos should be dismissed with prejudice.

**3. Any Individual Capacity Claims Against Prosecutor Baker Regarding the No-Contact Order Must Also Be Dismissed.**

As Count III of the Complaint, Plaintiff Jeremy Risner claims a violation of Due Process when he was arrested under a no longer valid no-contact order between him and Plaintiff Rebecca Risner as a result of the Victim Advocate's—under Prosecutor Baker's supervision—failure to cancel the order. [ECF 17 at 19-21]. Plaintiffs fail to state a claim here for several reasons.

**i. The Indiana Protective Order Registry**

Plaintiffs fail to state a claim under Rule 12(b)(6), as Prosecutor Baker has no duty requiring the management or maintenance of the Indiana Protective Order Registry. While Plaintiffs may state otherwise, Indiana law is clear that the removal of a no-contact order from the Indiana Protective Order Registry is solely within the purview of the state courts. *See* Ind. Code § 5-2-9-5.5 ("The office of judicial administration shall create, manage, and maintain the [Indiana protective order] registry"). It is the county circuit court clerk, *not the prosecutor*, who bears the statutory responsibility of removing the name of a person subject to the criminal no-contact order from the register. Ind. Code § 5-2-9-9. *See also* Indiana Office of Court Services' Protection Order Deskbook, Chapter 6 at 87[7] ("[A] No Contact Order as a condition of pretrial release terminates when the Court releases the bond. Although the No Contact Order terminates by operation of law, the *court* must file a termination notice with the Protection Order Registry.")[8]

---

[7] A copy of the Protection Order Deskbook is publicly available at https://www.in.gov/courts/iocs/publications/po-forms/

[8] While the Protection Order Deskbook does state that it is best practice for the state court to request that the prosecutor file a dismissal of the no-contact order after the State files a motion to dismiss criminal charges, this is at the desecration of the court. The ultimate responsibility to dismiss the no-contact order after the criminal case is dismissed belongs to the court itself. Indiana Office of Court Services' Protection Order Deskbook, Chapter 6 at 88. *See also Id*. at 118 (If a no contact order is issued as a condition of pretrial release, it terminates upon final disposition of the case).

Here, despite Plaintiffs' assertion to the contrary, Prosecutor Baker has no legal duty to update the Indiana Protective Order Registry. Plaintiff Jeremy Risner was subject to a no-contact order as part of his pretrial release in a state criminal case. [*See* Ex. B]. While this case was dismissed on July 15, 2022, the Starke Circuit Court never entered the automatic dismissal of the no-contact order into the Indiana Protective Order Registry until April 22, 2024. [*See* State Court Docket 75C01-2109-F5-000029 at July 15, 2022, April 22, 2024]. While the Starke Circuit Court may ask Prosecutor Baker to file a motion to dismiss the no-contact order with a motion to dismiss the case, the Circuit Court Clerk is responsible to file the Order dismissing the case into the Indiana Protective Order Registry. As such, Prosecutor Baker, or any of her office staff, had no duty to remove Plaintiff Jeremy Risner from the Indiana Protective Order Registry and is not the "direct and proximate" cause of any alleged constitutional deprivations related his arrest.

**ii. There Is No Vicarious Liability Under § 1983.**

To the extent Plaintiffs allege individual capacity liability for Prosecutor Baker for the actions of others regarding the no-contact order, this too fails to state a claim under Fed. R. Civ. P. 12(b)(6). "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018); *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). For a defendant to be held liable under § 1983, he or she must have been personally involved in the violation of the plaintiff's constitutional rights. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018).

Here, Plaintiffs make claims under § 1983 that Prosecutor Baker failed to properly supervise and train the Victim Advocate, or "establish administrative practices" with "adequate procedural safeguards" regarding the maintenance of the Indiana Protective Order Registry. [ECF 17 at ¶¶ 118- 125]. Plaintiffs fail to allege that Prosecutor Baker had any personal involvement

with any of Plaintiff Jeremy Risner's alleged constitutional deprivation, beyond failing to supervise an employee in that employee's maintenance of a repository that they are not responsible for maintaining. As there is no vicarious liability under § 1983, Plaintiffs have failed to state a claim on these grounds under Fed. R. Civ. P. 12(b)(6).

**iii. Plaintiffs Cannot Show That Any Failure to Update the Protective Order Registry Was Anything but Negligent.**

Even if Plaintiffs can show that Prosecutor Baker had a duty to update the Protective Order Registry (they cannot), and even if they can show that Prosecutor Baker was personally involved in any failure to update the Registry (they cannot), Prosecutor Baker would still not be liable under § 1983 as Plaintiffs claim that Prosecutor Baker's conduct was merely negligent. Plaintiffs' state that Prosecutor Baker "knew or reasonably should have known" that the still active no-contact order that her employee allegedly failed to remove from the Registry would "foreseeably result" in a constitutional deprivation. [ECF 17 at ¶ 122]. This claim sounds completely in negligence. As discussed above, a supervisor must be personally involved in a constitutional deprivation for her to be held liable under § 1983. *Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025). Even if a plaintiff can show that the supervisor was personally involved, the supervisor must also have the necessary state of mind. *Id*. A government official's negligent act that causes an unintended loss or injury to life, liberty, or property does not rise to a Fourteenth Amendment Due Process violation. *Daniels v. Williams* 474 U.S. 327, 328 (1986). "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Id*. at 331. (emphasis in original).

Here, Plaintiffs only allege that Prosecutor Baker's failure to supervise the Victim Advocate or her own negligent practices in maintaining records was the cause of Plaintiff Jeremy Risner's alleged false arrest. Plaintiffs cannot show that Prosecutor Baker *deliberately* decided to

not remove the no-contact order from the registry to effectuate the alleged false arrest. Because they cannot show that Prosecutor Baker had any duty to remove the no-contact order from the Registry, cannot show any personal involvement, and cannot show that Prosecutor Baker deliberately decided to not allow the Victim Advocate to remove the no-contact order from the Registry, Plaintiffs fail to state a claim under Rule 12(b)(6). Claim III of Plaintiffs' Complaint should be dismissed with prejudice. Plaintiffs either lack standing to bring or fail to state a claim against Prosecutor Baker or Deputy Prosecutor Poulos on all claims, which should be dismissed with prejudice.

**4. Any Individual Capacity Claims Against Prosecutor Baker Regarding Post-Prosecution Public Communications Must Be Dismissed.**

While Plaintiffs appear to only allege a First Amendment violation for a retaliatory prosecution due to Plaintiff Rebecca Risner's criticism of law enforcement officers on April 21, 2024 [ECF 17 at ¶¶ 160-163], a liberal construction of Plaintiffs Amended Complaint could be read as an assertion that Prosecutor Baker violated Plaintiff Rebecca Risner's First Amendment right when Prosecutor Baker "deleted" her public Facebook page. [ECF 17 at ¶¶ 95-100]. This claim—no matter how liberally constructed—fails to state a claim upon which relief can be granted.

Government officials can be liable for First Amendment violations under § 1983 when they engage in state action via a social media platform. *Lindke v. Freed*, 601 U.S. 187, 196 (2024). A public official's social media post and comment threads can be construed as government-controlled property. *Krasno v. Mnookin*, 148 F.4th 465, 479 (7th Cir. 2025). When a government restricts speech on property it controls, the type of forum governs whether a speech restriction is constitutional. *Id*. The comment threads to a social media post are considered a designated public forum when the page is open for comment without restriction. *Id*. at 484. After opening a

designated public forum, the government is not obligated to keep it open. *See DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.,* 196 F.3d 958, 970 (9th Cir. 1999) (The government has an inherent right to control its property, which includes the right to close a previously open forum). *See also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37, 46 (1983) ("Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum.")

Here, Plaintiff Rebecca Risner alleges that, after several comments back and forth between her and Prosecutor Baker, that Prosecutor Baker "deleted" her Facebook page in response to the discussion. [ECF 17 at ¶¶ 94-100, *See also* Ex. E]. Even assuming that Prosecutor Baker's political Facebook page is government property for First Amendment purposes, Prosecutor Baker simply closed the designated public forum. Prosecutor Baker is not required to indefinitely maintain her official public Facebook page for public comments. It is important to note that Plaintiff does not allege that Prosecutor Baker deleted any of her comments, nor blocked Plaintiff from the page or any posts. Prosecutor Baker was entitled to close the designated public forum that is her Facebook page without violating the First Amendment. No matter how liberally construed, Plaintiffs have failed to state a claim for any First Amendment violation for Prosecutor Baker taking down her Facebook Page. Plaintiffs have failed to state a claim under Rule 12(b)(6). All claims against Prosecutor Baker and Deputy Prosecutor Poulos should be dismissed with prejudice.

**C. Plaintiffs' Claims Against Judge Hasnerl.**

In addition to their claims against Prosecutor Defendants, Plaintiffs also sued Knox City Court Judge Hasnerl "in his official capacity solely for declaratory and prospective injunctive relief." [ECF 17 at ¶ 12]. Plaintiffs state that Judge Hasnerl—along with other State Defendants and named Knox City Court staff—violated Plaintiff Rebecca Risner's Fourteenth Amendment Procedural Due Process rights though "arbitrary courtroom practices, restriction of public access,

jurisdictional irregularities, and administrative failures." [ECF 17 at ¶ 154]. Plaintiffs take issue with the Knox City Court's jurisdiction as a criminal court for misdemeanor charges for Starke County, its operation as a court of no-record, Judge Hasnerl's refusal to hear oral argument on Plaintiff Rebecca Risner's motion to dismiss in the criminal case, and a delay in transfer of the case to Starke County Circuit Court. [ECF 17 at 26-27]. Plaintiffs state that, because she might be subject to the Knox City Court in the future, Judge Hasnerl must be subject to a continuing injunction ordering him to operate his courtroom under this Court's "articulated safeguards." [*Id*.]. Plaintiffs fail to state a claim upon which relief can be granted for declaratory relief and lack standing to be granted an injunction.

**a. Plaintiffs' Fail to State a Claim for Declaratory Relief.**

Similar to the discussion regarding the Indiana Protective Order Registry, much of Plaintiffs' assertions regarding any due process violations are flawed understandings of Indiana law. Plaintiffs often refer to "jurisdictional irregularities" and "administrative failures" regarding the Disorderly Conduct prosecution in the Knox City Court; however, Indiana law provides otherwise. A city court is governed by the rules for circuit courts and has all the powers incident to a court of record. *City of Wabash v. Wabash Cnty. Sheriff's Dep't*, 562 N.E.2d 1299, 1301 (Ind. Ct. App. 1990). City courts in Indiana have jurisdiction over all criminal misdemeanors and infractions. Ind. Code. § 33-35-2-3(2). The Indiana Court of Appeals has specifically said that the Knox City Court has criminal misdemeanor jurisdiction over all of Starke County. *See Mareska v. State*, 534 N.E.2d 246, 248 (Ind. Ct. App. 1989) ("[d]espite [defendant's] artful arguments to the contrary, it is clear that the Knox city court has county-wide misdemeanor jurisdiction"). Additionally, Indiana City Courts are authorized to hold both bench and jury trials. Ind. Code § 33-35-5-5. Statute also provides that city courts are courts of no-record, which means that written orders are not required. Ind. Code § 33-35-5-7. A defendant in city court can request a change of

venue into the county's circuit court, divesting all jurisdiction to take any further action except to grant the venue change. Ind. Code § 33-35-5-2; *Goshen City Ct. v. State ex rel. Carlin*, 287 N.E.2d 591, 595 (1972).

Here, Judge Hasnerl has the authority to conduct the Knox City Court in the same manner as the Starke Circuit Court, including having the discretion to manage courtroom proceedings, hearing criminal misdemeanor cases from all of Starke County, and ruling on motions from the bench without written order. Further, Indiana law also authorizes Judge Hasnerl to hold both bench trials and jury trials. As Plaintiffs alleged, Judge Hasnerl initiated the change of venue process to the Starke Circuit Court upon Plaintiff Rebecca Risner's request. [ECF 17 at ¶¶ 68-71; Docket in 75H01-2407-CM-000714]. None of Judge Hasnerl's courtroom practices rise to a Due Process deprivation. Even if these practices did violate either of Plaintiffs constitutional rights[9] (they did not), any violation would be harmless, as Plaintiff Rebecca Risner's case was transferred to Starke Circuit Court and her criminal charge was dismissed. As such, Plaintiffs are not entitled to declaratory relief. Plaintiffs have failed to state a claim on which relief can be granted against Judge Hasnerl.

Beyond Plaintiffs' misunderstanding of Indiana's city courts, any request for declaratory judgment under § 1983 against Judge Hasnerl is barred by sovereign immunity. As stated above, the Eleventh Amendment prohibits suits against state officials in their official capacity. *Jones*, 998 F.3d at 786. Indiana Judges are state officials, meaning they are generally protected from suit under § 1983. *Mattingly v. Marion Superior Ct.*, 667 F. Supp. 3d 946, 951 (S.D. Ind. 2023); *see also Woods v. Michigan City, Ind.*, 940 F.2d 275, 279 (7th Cir. 1991) (Holding that Indiana Judges are judicial officers of the State judicial system). The only three exceptions exist to sustain an

---

[9] As discussed above, Plaintiff Jeremy Risner does not allege that Judge Hasnerl violated his constitutionally secured rights but that of his wife, Plaintiff Rebecca Risner, which he lacks standing to challenge.

official capacity suit against a state official is if the state official waives sovereign immunity, Congress acts to abrogate the immunity, or if the plaintiff seeks prospective equitable relief under *Ex parte Young*. *Peirick*, 510 F.3d at 695. Here, Judge Hasnerl has neither waived, nor can Plaintiffs point to congress abrogating, sovereign immunity. Plaintiffs specifically state that they seek declaratory relief against Judge Hasnerl for his *past* conduct during the 2024 proceedings, which would not fall under *Ex parte Young*. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (*Ex parte Young* exception "is narrow…[and] does not permit judgments against state officers declaring that they violated federal law in the past"). As such, Plaintiffs have failed to state a claim for declaratory relief under Rule 12(b)(6) and their request should be dismissed.

**b. Plaintiffs Are Not Entitled to Injunctive Relief.**

Finally, Plaintiffs fail to show they are entitled to an injunction against Judge Hasnerl or the Knox City Court, as they lack standing. To have standing to sue for injunctive relief, a plaintiff must show a personal stake in an outcome of a case by alleging direct injury that is real and immediate, not conjectural or hypothetical. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983). Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects. *Srivastava v. Newman*, 12 F. App'x 369 at *3 (7th Cir. 2001) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974)); *see also Lyons*, 461 U.S. at 103 (possibility that plaintiff would again be subjected to illegal choking behavior by police insufficient to show immediate danger of direct injury). A plaintiff seeking an injunction from a criminal case that has been terminated and does not allege a threatened or actual pending criminal prosecution, lacks standing to seek injunctive relief, as the future injury is purely speculative. *Srivastava*, 12 App'x at *3 (holding that a plaintiff was not entitled to injunctive relief after her criminal case was dismissed, and any threat

of future prosecution was only speculative). *See Sierakowski v Ryan*, 223 F.3d 440, 444 (7th Cir. 2000) (finding that the mere possibility that plaintiff may sometime in the future be subject to an unconstitutional practice did not establish a real and immediate case or controversy, lacking standing to bring an injunction claim).

Here, Plaintiffs alleged future injury is purely speculative. Plaintiffs have not asserted that they are under any threat of actual or imminent due process violations in Knox City Court. Plaintiff Rebecca Risner is no longer being prosecuted in any court, as the case was dismissed. [ECF 17 at ¶89; Ex. C at 10]. Any claim that she or Plaintiff Jeremy Risner might be subject again to any future alleged due process violations in Knox City Court simply by being Starke County residents is speculative at best, as Plaintiffs have not shown a real and immediate threat that they are currently being charged or will have criminal charges brought against them again[10] in Knox City Court or that any alleged procedural due process violations will happen again. As such, Plaintiffs both lack standing to bring a claim for injunctive relief against Judge Hasnerl in his official capacity under Fed. R. Civ. P. 12(b)(1). Plaintiffs have not stated a claim on which relief can be granted or lack standing to bring such claims. This Court should dismiss all Plaintiffs' claims with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**CONCLUSION**

WHEREFORE, for the foregoing reasons, State Defendants, by counsel, respectfully request the Court grant his motion to dismiss, dismiss the claims raised against him in Plaintiffs' Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and for all other just and proper relief.

[10] It is important to note that a search of the Indiana State Court Docket shows Plaintiff Rebecca Risner has only ever been criminally prosecuted for the April 21, 2024 events and that Plaintiff Jeremy Risner has never had a case filed in the Knox City Court.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Attorney No. 18857-49

Date: April 24, 2026

By: */s/ Timothy M. Hamilton*
Timothy M. Hamilton
Deputy Attorney General
Attorney No. 39708-22

OFFICE OF THE INDIANA ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 234-0521
Facsimile: (317) 232-7979
E-mail: Timothy.Hamilton@atg.in.gov

**Certificate of Service**

I certify that on April 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I further certify that on April 24, 2026, notice of this filing will be sent to the parties by operation of the Court's electronic filing system. I further certify that on April 24, 2026, I mailed, by United States Postal Service, first-class postage prepaid, the document to the following non-CM/ECF participants:

Rebecca Risner
3860 S. 300 E.
Knox, IN 46534
*Pro Se Plaintiff*

Jeremy Risner
3860 S. 300 E.
Knox, IN 46534
*Pro Se Plaintiff*

/s/ *Timothy M. Hamilton*
Timothy M. Hamilton
Deputy Attorney General
Attorney No. 39708-22