FILED – MAY 15, 2026 – PM01:24
U.S. DISTRICT COURT
Northern District of Indiana
Chanda J. Berta – Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

**REBECCA RISNER,** )
**JEREMY RISNER,** )

Plaintiffs, ) CASE NO. 3:26-cv-00208-CCB-SJF

)

v. )

)

**STARKE COUNTY,** )
by and through its Board of Commissioners, )
**PATRICK MCKEE,** )
in his individual capacity, )
**JUSTIN MCDANIEL,** )
in his individual capacity, )
**CHARLES HASNERL,** )
in his official capacity solely for declaratory )
and prospective injunctive relief, )
**ANGELA JESUIT,** )
in her individual and official capacities, )
**TAYLOR LOCKRIDGE,** )
in her individual and official capacities, )
**LESLIE A. BAKER,** )
in her individual and official capacities, )
**THOMAS M. POULOS,** )
in his individual and official capacities, )

Defendants.

**PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS**

(Baker, Poulos, and Hasnerl)

## INTRODUCTION

Plaintiffs Rebecca Risner and Jeremy Risner respectfully submit this Opposition to the Motion to Dismiss filed by State Defendants Prosecutor Leslie Baker, Chief Deputy Prosecutor Matthew Thomas Poulos, and Knox City Court Judge Charles Hasnerl. [ECF 23/24]. Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Their motion should be denied.

As pro se litigants, Plaintiffs' complaint is entitled to liberal construction, (Erickson v. Pardus, 551 U.S. 89, 94 (2007)). At the 12(b)(6) stage, this Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiffs' favor, (Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Dismissal is appropriate only where no plausible basis for relief exists on any set of facts consistent with the allegations.

Defendants raise four categories of argument: (1) standing defects as to Plaintiff Jeremy Risner; (2) absolute prosecutorial immunity for Baker and Poulos; (3) miscellaneous individual-capacity arguments regarding Baker's handling of the no-contact order and Facebook account; and (4) dismissal of all claims against Hasnerl on sovereign immunity and standing grounds. Each argument fails.

One fact frames the entire motion: the disorderly conduct charge against Plaintiff Rebecca Risner was dismissed by a state court as unconstitutional as applied, on First Amendment grounds. Defendants themselves submitted that dismissal order as Exhibit C. The court noted it was 'surprised at how straightforward and unambiguous' Plaintiff's speech actually was, which

directly contradicts the narrative advanced in the officer's probable cause affidavit and maintained by the prosecution throughout eleven months of proceedings. [FAC ¶ 84; Ex. C]. The constitutional infirmity of that prosecution underscores that the challenged conduct plausibly falls outside the protected advocacy functions that absolute immunity was designed to shield.

## STANDARD OF REVIEW

A complaint survives a Rule 12(b)(6) motion if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept as true all allegations in the complaint and construe them favorably to the plaintiff, (Erickson, 551 U.S. at 94). Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers, (Haines v. Kerner, 404 U.S. 519, 520 (1972)). This obligation is mandatory, not discretionary. In Sause v. Bauer, 138 S. Ct. 2561, 2563 (2018) (per curiam), the Supreme Court reversed a 12(b)(6) dismissal in a pro se § 1983 case, holding that the district court "was required to interpret the pro se complaint liberally, and that when the complaint was read that way, it stated claims that could not properly be dismissed for failure to state a claim." Sause is directly controlling here: State Defendants raise immunity-based arguments at the 12(b)(6) stage, and this Court is required, not merely permitted, to construe Plaintiffs' complaint liberally in evaluating those arguments.

Where immunity is raised as a defense at the pleading stage, the defendant bears the burden of establishing that immunity is warranted for each specific challenged function, (Burns v. Reed, 500 U.S. 478, 486-87 (1991)). This Court must construe all allegations in Plaintiffs' favor and may not resolve factual disputes about what function the defendant was actually performing, (Hill v. Coppleson, 627 F.3d 601, 605 (7th Cir. 2010)). Dismissal on immunity grounds is

inappropriate where the complaint plausibly alleges conduct outside the protected function, which is a showing Defendants cannot make here.

## ARGUMENT

### PRELIMINARY OBJECTION TO STATE DEFENDANTS' ATTACHED EXHIBITS

State Defendants have attached five exhibits to their motion. Plaintiffs do not object to judicial notice of the existence of the public records and court orders included as Exhibits A through D, as those documents are referenced in and central to Plaintiffs' First Amended Complaint. Plaintiffs object, however, to any use of disputed factual characterizations contained within those documents as established truth at the pleading stage. The court may notice that public records exist, it may not accept contested narratives within them as fact at the 12(b)(6) stage. Parungao v. Cmty. Health Sys., 858 F.3d 452, 457 (7th Cir. 2017).

As to Exhibit E, Plaintiffs do not object to judicial notice of the existence of Defendant Baker's Facebook posts. Plaintiffs specifically object to any use of the disputed content, context, characterizations, or inferences drawn from those posts as established facts at the pleading stage. The content and meaning of those communications, including their relationship to Plaintiffs' prosecution and the circumstances surrounding the deletion of the page, are factual questions that must be resolved in Plaintiffs' favor on a motion to dismiss. Bielanski v. County of Kane, 550 F.3d 632, 633 (7th Cir. 2008).

Plaintiffs further note two categories of error in State Defendants' motion that bear on the accuracy of the factual and legal framework presented to this Court. First, State Defendants invoke the case-or-controversy and standing requirements twice by reference to "Article II." [ECF 23 at 2]. Standing and the case-or-controversy requirement arise from Article III, § 2 of the

Constitution, not Article II. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 559–60 (1992). Second, State Defendants' brief recites key events in this case as having occurred on "June 30, 2026" and "October 1, 2026", both dates that post-date the filing of their own motion. [ECF 24 at 5–6]. Plaintiffs assume these are scrivener's errors for June 30, 2025 and October 1, 2024 respectively, but do not concede the underlying timeline as State Defendants have characterized it.

## CO-DEFENDANTS' ADMISSIONS CORROBORATE PLAUSIBILITY OF PLAINTIFFS' ALLEGATIONS

On April 24, 2026, co-defendants Starke County, Patrick McKee, and Justin McDaniel filed their Answer to Plaintiffs' First Amended Complaint [ECF 22], admitting numerous factual allegations central to this action. While those admissions do not bind the State Defendants, they are part of this Court's record and directly bear on the plausibility of Plaintiffs' allegations under Twombly and Iqbal. State Defendants cannot credibly argue that Plaintiffs have failed to plead sufficient facts when those facts have been admitted by co-parties in the same proceeding.

Specifically, co-defendants have admitted: that the dash camera does not show Plaintiff's vehicle striking the edge of the roadway, swerving, or committing any observable traffic violation [ECF 22 ¶ 24]; that Plaintiff was placed in handcuffs behind her back while physically compliant and without having been cited for any criminal offense [ECF 22 ¶ 31]; that no drugs or contraband were found [ECF 22 ¶ 35]; that Co-Plaintiff was arrested and detained overnight based on the no-contact order and released after verification confirmed the order had been dismissed [ECF 22 ¶¶ 43, 49, 135]; that the Singleton v. McKee federal civil rights lawsuit involved materially similar alleged conduct by Defendant McKee and was resolved by settlement [ECF 22 ¶¶ 101-103, 106]; and that the Starke County Sheriff acted as final policymaker for law enforcement practices within the Starke County Sheriff's Department [ECF 22 ¶ 166]. These admissions, entered in the

same proceeding, confirm that Plaintiffs' core factual allegations are not speculative or conclusory; they are corroborated by Defendants' own concessions.

## I. BOTH PLAINTIFFS HAVE INDEPENDENT STANDING TO MAINTAIN THEIR CLAIMS

Defendants argue that Jeremy Risner lacks standing to assert claims for injuries suffered by Rebecca Risner, and vice versa. While Plaintiffs acknowledge the general rule that a litigant must assert their own legal rights, Powers v. Ohio, 499 U.S. 400, 410 (1991), this argument mischaracterizes the complaint. Both Plaintiffs allege independent constitutional injuries traceable to distinct defendants. Specifically: Jeremy Risner's independent claims arise from his own arrest and overnight incarceration based on the administratively maintained inaccurate no-contact order (Count III) and from the unlawful attempt to exclude him from a public criminal hearing on February 4, 2025 (Count VII). Rebecca Risner's independent claims arise from her unlawful stop, detention, and search (Counts I, II, IV, V), the retaliatory prosecution of her constitutionally protected speech (Counts VI, VIII), and the procedural deprivations she personally suffered in Knox City Court (Count VII). Neither plaintiff is asserting the constitutional rights of the other; each is asserting their own.

### *A. Jeremy Risner's Independent Claims*

Jeremy Risner was personally arrested at the April 21, 2024 traffic stop based on a no-contact order that had been dismissed in 2022 but remained as active in the Indiana Protective Order Registry due to administrative failures alleged against Baker. [FAC ¶¶ 43-49]. His arrest was a direct deprivation of his own Fourth Amendment liberty interests, not a derivative claim based on Rebecca's prosecution.

To the extent any counts of the complaint reflect injuries shared by both Plaintiffs, such as the courthouse exclusion on February 4, 2025, the Court should construe the complaint liberally under Erickson and identify plausible independent injuries for each plaintiff rather than dismiss wholesale on standing grounds.

### *B. Jeremy Risner Has Independent Standing Against Hasnerl*

Defendants argue Jeremy Risner lacks standing against Defendant Hasnerl because he was not a party to Knox City Court proceedings. This argument fails. On February 4, 2025, Defendant Lockridge attempted to bar Jeremy Risner from the public gallery of Knox City Court without legal authority, requiring him to physically push past the bailiff to exercise his right to be present. [FAC ¶¶ 63-64]. The First Amendment guarantees members of the public, including family members of criminal defendants, an independent right to attend criminal proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-77 (1980). An unlawful attempt to deny that right constitutes a cognizable injury regardless of whether the exclusion was ultimately successful. Jeremy's injury is his own, is distinct from Rebecca's claims, and is independently sufficient to confer standing.

## II. CLAIMS AGAINST BAKER AND POULOS SURVIVE DISMISSAL

### *A. Official Capacity Claims Are Preserved Under Ex Parte Young*

Defendants correctly note that neither Baker nor Poulos is a 'person' subject to money damages in their official capacities under Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that the Eleventh Amendment bars official-capacity damages claims. Plaintiffs do not dispute this as to damages.

However, Plaintiffs' official-capacity claims against Baker and Poulos seek prospective declaratory and injunctive relief; not damages. Official-capacity suits for prospective equitable relief against state officers are expressly preserved by Ex Parte Young. Ex parte Young, 209 U.S. 123 (1908); Edelman v. Jordan, 415 U.S. 651, 664 (1974); Peirick v. Indiana U. Purdue U. Indianapolis Athletics Dept, 510 F.3d 681, 695 (7th Cir. 2007).

Baker's July 8, 2025 public post announcing that she disagreed with the First Amendment ruling and would take the matter 'back to law enforcement,' combined with her ongoing role as the elected Starke County Prosecutor and office policymaker, presents precisely the ongoing violation framing that Ex Parte Young requires. The threat of renewed enforcement is not hypothetical, Baker announced it publicly on her official page after the state court dismissed the charge as unconstitutional. [FAC ¶ 91; Ex. E]. Prospective relief declaring that enforcement posture unconstitutional and enjoining its repetition is what Ex Parte Young was designed to permit.

***B. Absolute Prosecutorial Immunity Does Not Shield the Challenged Conduct***

Defendants invoke absolute prosecutorial immunity for all individual-capacity claims against Baker and Poulos. Imbler v. Pachtman, 424 U.S. 409 (1976). This argument fails. Plaintiffs do not challenge Defendants' core advocative acts in initiating and presenting the State's case, but rather specific non-advocative conduct outside that protected role. The challenged acts are not within the quasi-judicial advocacy function that absolute immunity protects; and the record before this Court at the pleading stage, drawn from Defendants' own exhibits and admissions, makes that failure plain.

**1. The Functional Test Controls; Not the Title of the Actor.**

Absolute immunity depends on 'the nature of the function performed, not the identity of the actor who performed it.' Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). It covers only acts 'intimately associated with the judicial phase of the criminal process.' Imbler, 424 U.S. at 430. When a prosecutor acts instead as an administrator, investigator, or public communicator, only qualified immunity is available. Burns v. Reed, 500 U.S. at 492-95; Buckley, 509 U.S. at 273-77.

Imbler expressly reserved judgment on whether absolute immunity extends to 'those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate,' noting in footnote 33 that 'the prosecutor no doubt functions as an administrator rather than as an officer of the court' at some point. 424 U.S. at 430-31 n.33. The specific conduct challenged here falls squarely within that reserved territory.

**2. Defendants Bear the Burden of Proving Immunity for Each Specific Function.**

The Supreme Court has been 'quite sparing' in extending absolute immunity and refuses to do so 'any further than its justification would warrant.' Burns, 500 U.S. at 487. The presumption is qualified immunity; defendants bear the burden of proving absolute immunity is justified for the specific function challenged. Id. at 486-87. Defendants have not and cannot carry that burden as to either challenged actor on these facts.

**3. Poulos: Three Documented Failures of Independent Prosecutorial Review.**

Chief Deputy Prosecutor Poulos is the second-highest official in the Starke County Prosecutor's Office, operating under Prosecutor Baker. His individual liability arises not from his own documented personal conduct throughout the prosecution; conduct that, taken as a whole, demonstrates the complete absence of independent prosecutorial review that absolute immunity requires.

First: On October 1, 2024, following the initial hearing, Poulos engaged in a conversation with Plaintiff regarding charging practices and evidentiary review; a conversation recorded without Plaintiff's knowledge by a third party who attended the initial hearing, and subsequently published to YouTube. [FAC ¶¶ 55-56]. In that recorded conversation, Poulos stated, in substance, that the Prosecutor's Office files charges based solely on the officer's probable cause affidavit without conducting independent review of the underlying evidence before initiating a prosecution. [FAC ¶ 55]. That admission, made by the office's second-highest official, on camera, in an open-door office setting immediately following a criminal hearing, is the foundation of the non-advocacy function theory. Under Buckley v. Fitzsimmons, 509 U.S. at 273-76, when a prosecutor performs the same function as a police officer, accepting and transmitting the officer's account without independent professional evaluation, the same immunity applies: only qualified immunity. Kalina v. Fletcher, 522 U.S. 118, 130-31 (1997), is equally on point: a function that does not involve 'the exercise of an advocate's professional judgment' does not warrant absolute immunity regardless of the title of the actor.

Second: At the November 19, 2024 pretrial conference, Poulos declined to review written materials Plaintiff provided that specifically challenged the constitutional and evidentiary basis of the probable cause affidavit; tossing them aside unread. [FAC ¶ 58]. He then informed Plaintiff that because of the YouTube video, she would be given only two options: accept a plea or proceed to trial. [FAC ¶ 58]. This is significant on two independent grounds. It establishes that Poulos actively refused to engage with a direct written challenge to the charging document's constitutional sufficiency, the antithesis of the professional advocacy function that warrants immunity. It also directly connects the continuation of the prosecution to Plaintiff's constitutionally protected speech activity: the surfacing of the YouTube recording itself,

containing protected speech critical of the office's charging practices, then became the stated basis for foreclosing any resolution short of plea or trial.

Third: At the April 11, 2025 hearing before Magistrate Cox, when asked whether an amended charging information had been filed, Poulos represented to the court that he believed it had been filed. [FAC ¶ 77]. It had not. Poulos then filed the amended charging information in the Knox City Court at 10:24 AM and, more than one hour later, in the Starke Circuit Court at 11:36 AM, on the same day, after the hearing, with no legal basis for filing it first in a court that no longer had jurisdiction over the case. [FAC ¶¶ 78-79]. The need to file an amended charging information at all confirmed what Plaintiff had formally raised since January 4, 2025: the original charging document was defective on its face, having cited the wrong subsection of the disorderly conduct statute. [FAC ¶¶ 59-60]. Plaintiff had raised this defect formally and in writing, including in a pro se motion to dismiss filed January 4, 2025, and Poulos had dismissed the challenge without engagement at the January 14, 2025 pretrial conference. [FAC ¶ 60].

Taken together, these three failures, (the admission about charging practices, the refusal to review written challenges to the affidavit, and the misrepresentation to the court about the amended information), followed by a scrambled same-day filing do not describe a prosecutor exercising careful professional advocacy. They describe a prosecution maintained through inertia, with constitutional defects identified by the defendant herself and ignored at every stage until a different court dismissed the charge as unconstitutional. That is not the advocacy function that Imbler and its progeny protect. It is exactly the administrative and ministerial conduct those cases reserve from absolute immunity.

Defendants cite Anderson v. Simon, 217 F.3d 472 (7th Cir. 2000), and Spiegel v. Rabinovitz, 121 F.3d 251 (7th Cir. 1997), for the proposition that charging decisions are immune. These

cases are distinguishable on their facts in a manner that directly benefits Plaintiffs. In Spiegel, the Seventh Circuit granted immunity because the prosecutor had "reviewed the police records, interviewed the parties involved, and then passed on his assessment"; a genuine exercise of professional advocacy judgment. 121 F.3d at 257. Anderson confirmed the same principle: immunity attaches when a prosecutor "reviewed and weighed the evidence" in his role as advocate before making a charging determination. 217 F.3d at 475. That is precisely the independent review function that warrants absolute immunity. The record here reflects the opposite: Poulos's own on-camera admission established that the office files charges based solely on the officer's probable cause affidavit without independent evidentiary review. [FAC ¶ 55]. Where a prosecutor does not perform the independent evaluative judgment that Spiegel and Anderson describe, immunity does not attach. These cases do not shield Poulos, they actually expose him. The line those cases draw is between genuine professional evaluation (immune) and the absence of evaluation (not immune). Poulos's own documented conduct places him on the unprotected side of that line.

**4. Baker: Four Independent Grounds for Individual Liability.**

Prosecutor Baker is the elected Starke County Prosecutor and Poulos's direct supervisor. She is the policy-making official for the office's charging practices. Her individual liability rests on four independent grounds, each arising from her own acts; not from any theory of vicarious liability for Poulos's conduct. Section 1983 does not permit respondeat superior liability. Monell v. Dept of Social Servs., 436 U.S. 658, 691 (1978). Baker's liability is her own.

First: Office Charging Policy: As the elected Prosecutor and office policymaker, Baker established, maintained, or was deliberately indifferent to the office practice that Poulos described: filing charges based on the officer's affidavit without independent evidentiary review.

Under Monell, a constitutional violation resulting from an official policy or custom established by a final policy-making authority supports § 1983 liability. Id. at 694. Baker is the final policy-making authority for the Starke County Prosecutor's Office on charging decisions. Poulos's admission, coming from the office's second-highest official, is evidence of what that policy was. Baker's own public statements already in the record further define the gap between her office's professed standards and its actual practice. Eight days after the Circuit Court dismissed the charge as unconstitutional as applied, Baker publicly stated she disagreed with the ruling and would take it back to law enforcement; characterizing a prosecution the court found constitutionally infirm as 'the process working.' [FAC ¶¶ 91-94; Ex. E]. Poulos's on-camera admission that charges are filed based solely on the officer's probable cause affidavit without independent evidentiary review [FAC ¶ 55] directly confirms the absence of the independent prosecutorial judgment that absolute immunity is designed to protect. These are party opponent admissions under FRE 801(d)(2) that go to the heart of whether the conduct at issue falls within or outside the scope of absolute prosecutorial immunity.

Second: Conduct at the June 16, 2025 Hearing: Baker personally took over the prosecution in May 2025, informing Plaintiff by email that she would be handling the case going forward. [FAC ¶ 81]. She then personally appeared at the June 16, 2025 hearing and personally objected to the admission of Deputy McDaniel's body camera footage; footage that, when admitted over her objection, the court found "straightforward and unambiguous" in establishing the charge was unconstitutional as applied. [FAC ¶¶ 85-87; Ex. C]. Baker's conduct at that hearing is her own act, not a derivative consequence of Poulos's earlier conduct, and it is independently significant for two reasons. First, her objection to the admission of the body camera footage, an attempt to suppress objective video evidence bearing directly on the constitutional sufficiency of the charge,

plausibly constitutes non-advocative factual handling rather than protected trial advocacy. Whitlock v. Brueggemann, 682 F.3d 567, 578-80 (7th Cir. 2012) (conduct that functionally operates to suppress or manipulate evidence rather than to advocate a position falls outside protected advocacy). Second, Baker's active participation in advancing a prosecution whose constitutional defects were then confirmed by the very evidence she sought to exclude raises a plausible inference that her conduct crossed the functional line from advocacy into non-advocative administrative and factual handling. Whether that line was crossed is a factual question that cannot be resolved at the pleading stage. Buckley v. Fitzsimmons, 509 U.S. at 273-76; Hill v. Coppleson, 627 F.3d 601, 605 (7th Cir. 2010).

Third: Discovery Response: Baker personally responded to Plaintiff's discovery request on May 12, 2025, informing Plaintiff that there were no disciplinary, Internal Affairs, or Giglio-related records in the State's possession for the involved deputies. [FAC ¶ 81]. This response is independently significant given the existence of prior federal civil rights litigation against the same officer [Singleton v. McKee, No. 3:24-cv-564 (N.D. Ind.)] and the Monell pattern-and-practice claims in this case. A prosecutor's administrative management of discovery obligations is not an advocacy function protected by absolute immunity. Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009) (reaffirming that Imbler's footnote 33 reserves from absolute immunity those acts where a prosecutor "functions as an administrator rather than as an officer of the court"; the Court's holding extended immunity only to supervisory tasks "directly connected with the conduct of a trial," id. at 344, which a pre-trial discovery response plainly is not).

Fourth: Post-Dismissal Facebook Post: Baker's July 8, 2025 public post; made after the charges were dismissed on First Amendment grounds, criticizing the court's ruling and announcing she would take the matter 'back to law enforcement' is squarely controlled by Buckley v.

Fitzsimmons, 509 U.S. at 276-78. The Supreme Court held that 'comments to the media have no functional tie to the judicial process just because they are made by a prosecutor,' and that a prosecutor making public statements occupies 'no different position than other executive officials who deal with the press.' Id. at 277. The Court further held there is no historical common-law immunity for such statements and refused to create one as a matter of policy. Id. at 277-78. Baker's post was made after all judicial proceedings had concluded; there was no case left to prosecute. It is pure public commentary with no functional tie to any judicial proceeding, past or present, and is subject at most to qualified immunity.

Defendants characterize the First Amendment claim against Baker as being solely about the deletion of her Facebook account. This misreads the complaint. The retaliatory conduct is Baker's public announcement, made while the account was active, that she would take the dismissed prosecution back to law enforcement. The subsequent deletion of the account does not retroactively immunize that retaliatory threat or moot the claim arising from it.

**5. Resolution at the Pleading Stage Is Improper.**

Where the immunity question turns on factual issues about what function the defendant was actually performing, dismissal at the 12(b)(6) stage is inappropriate. Hill v. Coppleson, 627 F.3d 601, 605 (7th Cir. 2010). This Court recently reaffirmed that principle directly: "[f]actual questions prevent the court from deciding this issue on this motion to dismiss," and that dismissal under Rule 12(b)(6) "is not appropriate" where such questions remain unresolved. Mayhew v. Starke County, No. 3:25-CV-46-CCB-SJF, slip op. at 13 (N.D. Ind. Mar. 10, 2026). The functional question of whether the specific challenged conduct falls within or outside the protected advocacy function is precisely the kind of factual inquiry that cannot be resolved at the pleading stage. Burns v. Reed, 500 U.S. 478, 486 (1991). The complaint plausibly alleges, with

specific factual support drawn in significant part from Defendants' own exhibits, that both Poulos and Baker performed non-advocacy functions at multiple documented points in the prosecution. Defendants have not demonstrated, and cannot demonstrate at this stage, that every conceivable construction of the complaint places all challenged conduct within the protected advocacy function. Dismissal would be error. Even if this Court were to consider qualified immunity as a fallback, which Defendants have not argued, dismissal would still be inappropriate because the constitutional rights at issue were clearly established well before the challenged conduct, as confirmed by the state court's own dismissal of the underlying charges on First Amendment grounds.

### *C. The Individual No-Contact Order Claim Against Baker*

Defendants argue Baker had no duty to submit the dismissed NCO to the Indiana Protective Order Registry, that there is no vicarious liability under § 1983, and that the conduct amounts only to negligence. These arguments do not reach the claim as pleaded.

State defendants' argument attacks a theory Plaintiff's never advanced. Plaintiffs' NCO claim is not premised on vicarious liability, it is premised on Baker's own administrative failure in connection with a record-keeping system that her office participates in; which directly caused Jeremy Risner's wrongful arrest on a dismissed order. A supervisor's direct knowledge of a constitutional deficiency combined with deliberate indifference to correcting it supports § 1983 individual liability without impermissible respondeat superior. Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001).

Defendants' argument that the Indiana Courts bear statutory responsibility for the registry may address one theory but does not negate the allegation that Baker's office played a direct administrative role in the failure, submitting the original NCO without ensuring that its 2022

dismissal was reflected in the registry. That administrative act and omission falls outside absolute immunity under Van de Kamp's own express terms, which distinguish administrative duties such as record maintenance from trial-connected functions. 555 U.S. at 344.

State Defendants assert that statutory responsibility for maintaining NCO records belongs exclusively to the court clerk. But documentary evidence obtained from the clerk's office confirms that the Prosecutor's Office actively opened and subsequently closed the no-contact order file at issue; conduct that State Defendants themselves now claim falls outside their office's responsibilities. State Defendants cannot simultaneously disclaim any duty to maintain NCO records and account for why their office was the entity that opened and closed the file in the first place. This contradiction is not resolvable on a motion to dismiss; it is precisely the kind of factual dispute that belongs in discovery. At minimum, it establishes that Plaintiffs' allegations are not speculative but are corroborated by documentary evidence, satisfying the plausibility standard under Twombly and Iqbal even as read through the mandatory liberal construction lens of Haines and Sause.

***D. The Facebook Account Deletion Does Not Extinguish the First Amendment Claim***

Defendants argue that closing a designated public forum does not violate the First Amendment; apparently reading the entire First Amendment claim as being about account deletion. This misreads the complaint.

The First Amendment retaliation claim is rooted in Baker's public statements, made while the account was active, announcing her disagreement with the constitutional ruling and threatening to take the matter back to law enforcement after a court found the prosecution unconstitutional. Those statements are the retaliatory conduct. A government official's public announcement, made in her official capacity, identifying Plaintiff by name, disagreeing with a constitutional

ruling, and announcing intent to re-involve law enforcement, would deter a person of ordinary firmness from continuing to exercise First Amendment rights, which is the operative legal standard. Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) The subsequent deletion of the account does not immunize the prior retaliatory speech or moot the prospective threat embedded within it.

## III. CLAIMS AGAINST HASNERL SURVIVE DISMISSAL

### *A. Plaintiffs Have Adequately Pleaded Due Process and First Amendment Violations*

Defendants argue that Hasnerl's courtroom practices did not rise to constitutional violations and that any violation was harmless because the case was ultimately transferred and dismissed. Both arguments fail.

Plaintiffs do not seek review of the correctness of any judicial ruling. [FAC ¶ 153]. The constitutional claims challenge specific procedural deprivations imposed outside any formal written order: (1) Hasnerl's refusal to permit argument on Plaintiff's pending motion to dismiss, stating the hearing's sole purpose was to inform her the motion was denied and that her arguments about defects in the charging instrument were 'irrelevant' [FAC ¶ 64]; (2) the exclusion of Plaintiff and members of the public from the courtroom without any written order, finding of necessity, or articulated legal basis [FAC ¶¶ 62-63]; and (3) Hasnerl's attempt to retain jurisdiction for proceedings Indiana law did not permit Knox City Court to conduct on these facts [FAC ¶¶ 68-71].

The harmlessness argument is misplaced. Plaintiffs are not challenging the final outcome of the criminal case; they prevailed. Plaintiffs challenge the constitutional integrity of the process itself: the right to be heard on a pending motion that raised non-waivable subject matter jurisdiction

defects; the right of the public to attend criminal proceedings; and the right to have a case decided by a court with proper jurisdiction. These procedural rights are not cured by a favorable outcome in a different court. Critically, Plaintiff's motion to dismiss raised defects in the charging instrument that implicated subject matter jurisdiction; a challenge that Indiana law treats as non-waivable regardless of when raised. Hasnerl's characterization of those arguments as 'irrelevant' was legally erroneous, not merely unfavorable.

The right of the public to attend criminal proceedings, including pretrial motion hearings, has been clearly established since Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980), and Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) and 478 U.S. 1 (1986). The presumption of public access may be overcome only by specific written findings that closure is essential to preserve a compelling governmental interest and that the closure is narrowly tailored to serve that interest. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606-07 (1982). No such findings were made here. No written closure order exists. No compelling interest was articulated. The complete absence of any procedural predicate for closure is itself the constitutional violation; defendants cannot point to a closure order that was never entered.

***B. Declaratory Relief Against Hasnerl Is Prospective Under Ex Parte Young***

Defendants argue that declaratory relief against Hasnerl is barred because it is retrospective; seeking only a declaration that he violated federal law in the past, and therefore outside Ex Parte Young. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). Defendants mischaracterize the relief Plaintiffs seek.

Plaintiffs do not seek a declaration of past wrongdoing. They seek a declaration that the ongoing practices of the Knox City Court as administered by Hasnerl; excluding the public from criminal proceedings without written findings, and denying defendants the opportunity to argue pending

motions raising non-waivable jurisdictional defects, are unconstitutional and must be prospectively corrected. The target is the continuing practice, not the historical event.

Hasnerl remains the presiding judge of Knox City Court. He retains unilateral authority to repeat these practices in any future proceeding. No written policy, standing order, or corrective action of any kind has been taken to prevent recurrence. The practices were entirely informal and undocumented; meaning they remain fully operative today in the same form they took on February 4, 2025. A declaration that these practices are unconstitutional, directed at Hasnerl in his official capacity going forward, is prospective relief squarely within Ex Parte Young's scope. This is not a case where the official has been replaced, the policy rescinded, or the conduct was a one-time event structurally incapable of repetition. Hasnerl still sits. The practices still exist, and Ex Parte Young was designed for exactly this situation.

***C. Plaintiffs Have Standing for Injunctive Relief***

Defendants invoke City of Los Angeles v. Lyons, 461 U.S. 95 (1983), arguing Plaintiffs lack standing for injunctive relief because future injury is speculative. This argument fails for three independent reasons.

**1. Rebecca Risner's Future Exposure Is Not Speculative.**

Plaintiff Rebecca Risner is a Starke County resident. [FAC ¶ 150]. Knox City Court has jurisdiction over misdemeanor matters arising throughout Starke County. The practices she challenges are informal, undocumented, and entirely discretionary, and they remain fully available for Hasnerl to repeat in any future proceeding. No corrective policy has been adopted. Defendants' own footnote 10, noting that Plaintiff has only once been criminally prosecuted, actually concedes that Knox City Court's jurisdiction is not limited to that case. Plaintiffs need

not demonstrate current pending charges to have standing against an unconstitutional ongoing practice. The credible risk of future exposure to the same unconstitutional procedures, absent any corrective action, satisfies Article III standing requirements.

**2. The Capable-of-Repetition-Yet-Evading-Review Exception Applies.**

Even if the Lyons analysis were a close question, the capable-of-repetition-yet-evading-review doctrine preserves standing. This exception applies when: (1) the challenged action is too short in duration to be fully litigated before cessation; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975).

Both prongs are satisfied. First, a pretrial criminal hearing lasts hours. By the time a party could seek emergency intervention to challenge an improper courtroom closure order, the hearing is over. The February 4, 2025 exclusion is the textbook capable-of-repetition-yet-evading-review scenario; Plaintiff had no mechanism to obtain emergency relief before the hearing concluded, and the constitutional violation was complete before it could be challenged. Second, as a Starke County resident subject to Knox City Court's jurisdiction, Plaintiff has a reasonable expectation of future proceedings before that court. The complete absence of any corrective action makes recurrence not merely possible but structurally certain absent prospective relief from this Court.

**3. The Public Has an Independent First Amendment Standing Interest.**

The February 4, 2025 courthouse exclusion did not only affect Plaintiff Rebecca Risner. Multiple members of the public, including family members and supporters, were denied entry to a public criminal hearing by Defendant Lockridge without any written order or legal authority. [FAC ¶ 63]. The exclusion of members of the public without legal authority directly corroborates Plaintiff Rebecca Risner's factual allegations and will be confirmed through sworn witness

statements in discovery. The complete absence of any written order, finding of necessity, or articulated compelling governmental interest is itself the constitutional violation. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606–07 (1982). Because no such predicate was ever created, the practice remains fully operative and capable of repetition in any future proceeding before Hasnerl.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety. Defendants have not carried, and cannot carry at this stage, their burden of establishing absolute immunity for each specific challenged function. The challenged conduct; Poulos's admission that charges are filed without independent evidentiary review, his refusal to engage with written constitutional challenges, his misrepresentation to the court about the amended information, Baker's conduct in connection with the video evidence review that plausibly crossed from advocacy into non-advocative factual handling and administrative suppression, her discovery response, and her post-dismissal public announcement of renewed law enforcement referral, plausibly falls outside the protected advocacy function that Imbler and its progeny shield. Whether any specific act falls on the advocacy or administrative side of that functional line is a factual question that cannot be resolved at the pleading stage. Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009); Buckley v. Fitzsimmons, 509 U.S. 259, 273–78 (1993); Hill v. Coppleson, 627 F.3d 601, 605 (7th Cir. 2010). As to Hasnerl, the challenged practices were informal, undocumented, and uncorrected, and prospective relief under Ex Parte Young is both authorized and required. If this Court finds standing lacking on any claim, dismissal must be without prejudice. Frederiksen v. City of Lockport, 384 F.3d 437, 438 (7th Cir. 2004); Collier v. SP Plus Corp., 889 F.3d 894, 896–97 (7th Cir. 2018).

WHEREFORE, Plaintiffs respectfully request that the Court deny State Defendants' Motion to Dismiss in its entirety, and in the alternative, that any dismissal on jurisdictional or standing grounds be entered without prejudice, and for all other just and proper relief.

Respectfully submitted,

Rebecca Risner

Rebecca Risner, Plaintiff

Jeremy Risner

Jeremy Risner, Plaintiff

Dated: 5/15/2026

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated above, I caused a true and correct copy of the foregoing Plaintiffs' Opposition to State Defendants' Motion to Dismiss to be served upon counsel of record for all Defendants by U.S. Mail, first-class postage prepaid, addressed as follows:

Timothy M. Hamilton / Gustavo A. Jimenez

Indiana Attorney General's Office

Indiana Government Center South, 5th Floor,

302 West Washington Street, Indianapolis, IN 46204-2770

Counsel for Baker, Poulos, and Hasnerl

Katlyn M. Christman

Clark Johnson & Knight, Ltd.

233 E. 84th Drive, Suite 301

Merrillville, IN 46410

Counsel for Starke County, McKee, and McDaniel

Robert T. Keen, Jr.,

215 E. Berry Street

Fort Wayne, IN 46802

Counsel for Angela Jesuit and Taylor Lockridge

Rebecca Risner

Rebecca Risner